# IN THE SUPREME COURT OF IOWA

No. 15–0296

Filed March 24, 2017

**MYRIA HOLDINGS INC. & SUBS,**

Appellant,

vs.

**IOWA DEPARTMENT OF REVENUE,**

Appellee.

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

An affiliated group of companies challenges the determination of the Iowa Department of Revenue that the group's parent company could not be included with its subsidiaries in an Iowa consolidated tax return because it did not receive taxable income under Iowa Code section 422.33(1). **AFFIRMED.**

Kimberley M. Reeder of The Law Office of Kimberley M. Reeder, Morehead, Kentucky, and Christopher L. Nuss and William C. Brown of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Donald D. Stanley Jr., Special Assistant Attorney General, and Paxton J. Williams, Assistant Attorney General, for appellee.

**HECHT, Justice.**

The Iowa Department of Revenue (Department) issued a final order concluding a foreign corporation was ineligible to join a consolidated tax return with two of its subsidiaries doing business in Iowa because it did not derive taxable income from within Iowa under Iowa Code section 422.33(1). On judicial review, the district court affirmed the agency's final order. On appeal, the foreign corporation and its subsidiaries contend the corporation properly joined the consolidated return because it derived taxable income in the forms of distributed earnings and each member's allocated share of the group's consolidated tax liability. We conclude the Department correctly concluded the foreign corporation lacked taxable income from within the State of Iowa and affirm the decision of the district court.

### I. Background Facts and Proceedings.

Myria Holdings Inc. (Myria) is a Delaware corporation with its primary place of business in Texas. Myria holds an ownership interest in several subsidiaries, including two Delaware limited liability companies (LLCs) doing business in Iowa: Natural Gas Pipeline Company of America LLC (NGPL) and NGPL PipeCo LLC (PipeCo). Myria holds an eighty-percent membership interest in PipeCo, the sole member of NGPL.[1]

Myria and its subsidiaries (the Group) are in the business of natural gas pipeline transmission and storage. NGPL is the principal operating subsidiary; it owns and operates a major natural gas

---

[1]Myria is the sole member of Myria Acquisition LLC, a Delaware LLC that owns the eighty-percent membership interest in PipeCo. Under Iowa's revenue regulations, a single-member LLC is treated like a division of its owner. Iowa Admin. Code r. 701—45.1 (2009); *see also* 26 C.F.R. § 301.7701-3(a) (2009). Thus, Myria Acquisition LLC is disregarded for tax purposes, and we regard it as a division of Myria for purposes of this opinion.

transmission and storage system primarily serving markets in Iowa and other Midwestern states. PipeCo is the sole member of NGPL; it owns real and personal property in Iowa and leases it to NGPL. As the parent company, Myria owns the subsidiaries and assists them with setting strategic priorities.

During tax year 2009, Myria received two categories of payments from NGPL and PipeCo: distributions of earnings and payments of each member's allocated tax liability. Myria received the distributions of earnings in accordance with its direct and indirect membership interest in the subsidiaries.[2] Myria received the allocated tax payments under a February 2008 Tax Allocation Agreement that apportioned the affiliated group's tax liability among its members.[3]

Under the tax allocation agreement, Myria agreed to join a federal consolidated tax return with PipeCo, NGPL, and other subsidiaries; prepare and file all appropriate documents for the consolidated return; and pay the Group's consolidated tax liability. PipeCo and NGPL agreed to make quarterly payments to Myria equal to their estimated quarterly federal income tax liability at least thirty days before each quarterly installment payment was due to the Internal Revenue Service (IRS). Each entity remained responsible for contributing its proportionate share of the group's overall tax liability but only Myria would make tax payments to the IRS. If the payments to Myria over the course of the tax

---

[2]Myria alleges that it used the distributed earnings to make distributions to its owners, service approximately $200 million of interest on debt it incurred for the Group's benefit, and pay a related third party to provide management services to Group members.

[3]The parties' contest how these payments should be characterized. The Department contends the payments amount to "pass through tax payments." The Group responds that the payments are not tax payments because tax payments are made to a government taxing authority and there is no state actor involved in their arrangement.

year exceeded the actual apportioned tax liabilities, Myria promised to refund any overpayment. In addition, PipeCo and NGPL assumed liability for and agreed to indemnify Myria against responsibility for any subsidiary's tax obligations, thus protecting Myria from the risk of underpayment.

Myria filed a federal consolidated return for tax year 2009 on behalf of the Group. In the federal return, both PipeCo and NGPL elected to be treated as corporations. The Group reported a net loss of $62,695,855; only NGPL reported net income.

The Group also filed an Iowa consolidated return for tax year 2009. *See* Iowa Code § 422.37 (2009). The return reported an apportioned net loss of $10,225,151 and an estimated overpayment of $2,192,762 for tax year 2009, which it applied to its estimated tax liability for tax year 2010. Myria reported no Iowa receipts.

The Department determined Myria was ineligible to be included in the consolidated return because it had not derived taxable income from within the state under Iowa Code section 422.33(1) during tax year 2009. The Department issued a "Notice of Assessment" against the Group assessing it for corporate income tax in the amount of $2,558,989 plus interest and penalties for tax year 2009. With Myria excluded from the consolidated return, the Group's tax liability was substantially greater.

The Group protested the Department's assessment, arguing Myria was eligible to be included in the consolidated return because it derived taxable income from within Iowa.[4] The Department informally rejected the Group's protest, and the Group sought a contested hearing. The

---

[4]Although at first glance it would seem counterintuitive that Myria preferred to be subject to taxation in Iowa, the preceding two paragraphs reveal the Group's consolidated tax burden would be substantially lower if Myria derived taxable income from within the state and could therefore join the consolidated return.

Department filed an answer, and the matter proceeded to a hearing before an administrative law judge (ALJ).

At the hearing before the ALJ, the Group presented testimony from Jason Francl, tax director of SteelRiver Infrastructure Management U.S., LLC, an investment advisory and management-services company that manages an investment fund holding a twenty-three percent ownership interest in Myria. Francl, who is also an officer and vice president of Myria, testified that SteelRiver has a management-services agreement with Myria under which Myria pays it to manage tax-filing obligations and provide executive and leadership services. He testified that he spends ten to twenty percent of his time performing this work and that he works closely with legal, treasury, and accounting colleagues to manage intragroup cash distributions, make interest payments to lenders, prepare financial reports, and manage the tax-compliance process for the Group. Francl further testified that Myria provides long-term financing for its subsidiaries' business activities and—as the parent company—sets strategic priorities for its subsidiaries.

In its posthearing brief, the Group argued Myria was properly included in the consolidated return because it derived income in tax year 2009 from its subsidiaries doing business in Iowa. Specifically, the Group asserted Myria received distributions of earnings—a portion of which were traceable to the subsidiaries' business activities in Iowa—and payments under the tax allocation agreement.

An ALJ issued a proposed decision upholding the Department's assessment. The Group appealed, and the director of the Department issued a final order adopting the proposed decision with certain amendments and clarifications.

The Department's final order concluded Myria was ineligible to join in the Group's consolidated tax return because Myria did not derive taxable income under Iowa Code section 422.33(1). The order concluded that the distributed earnings Myria received incident to its ownership interest in the subsidiaries amounted to an activity of "[o]wning and controlling a subsidiary corporation" and therefore did not constitute "doing business in the state or deriving income from sources within the state" within the meaning of section 422.33(1). *See id.* § 422.34A(5). Although PipeCo and NGPL are limited liability companies, the Department concluded they must be treated as corporations for purposes of Iowa's tax laws since they elected to be taxed as corporations in the Group's federal consolidated return. *See id.* § 422.32(4) (defining "corporations," for business tax purposes, to include "partnerships and limited liability companies taxed as corporations under the Internal Revenue Code").

The Department's final order also determined the payments Myria received from NGPL and PipeCo under the tax allocation agreement did not constitute income to Myria because those payments amounted to "pass-through tax expenses of the subsidiaries based on the subsidiaries' income." The director concluded the payments were not a monetary advance to the subsidiaries or a "working capital cushion" supplied by Myria, contrary to the Group's assertions; they were instead payments equal to the subsidiaries' allocated share of the Group's overall tax liability. Myria received no interest, fees for service, or any other fees under the tax allocation agreement in connection with its payment of the Group's tax liabilities. Thus, the Department concluded *KFC Corp. v. Iowa Department of Revenue*, 792 N.W.2d 308 (Iowa 2010)—which determined certain intercompany payments were taxable even though

they also would be offset or eliminated in a consolidated return—was distinguishable.

The Group filed a petition for judicial review. On September 10, 2014, the district court issued a ruling affirming the Department's decision, concluding Myria did not "deriv[e] income from sources within this state" under Iowa Code section 422.33(1). The Group appealed, and we retained the appeal.

## II. Scope and Standards of Review.

Section 17A.19 of the Iowa Administrative Procedures Act (IAPA) governs judicial review of final agency decisions. *See* Iowa Code § 17A.19; *KFC Corp.*, 792 N.W.2d at 312. Under section 17A.19, we must determine "[t]he validity of agency action . . . in accordance with the standards of review" set forth in that provision. Iowa Code § 17A.19(8)(*b*). Under Iowa Code section 17A.19, we only grant deference to an agency's interpretations of law if the particular matter is clearly vested by statute in the agency's discretion. *Id.* § 17A.19(10)(*c*), (*l*); *see also Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 12–14 (Iowa 2010). Even if interpretative authority has been clearly vested in the agency, we give no deference to an interpretation of law that is "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(*l*).

In this case, we must determine whether to uphold the Department's interpretations of Iowa Code sections 422.33(1) and 422.34A(5). To determine whether deference is owed to the Department's interpretations of those provisions, we determine whether the legislature "clearly vested" the Department with discretion to interpret them. *See Renda*, 784 N.W.2d at 12–14. However, because we conclude the Department's interpretations of Iowa Code sections 422.33(1) and 422.34A(5) are correct, we need not reach the question of whether they

are entitled to deference under section 17A.19(10). *See KFC Corp.*, 792 N.W.2d at 312.

### III. Analysis.

In this case we once again address the question of whether Iowa can subject a foreign corporation to income taxation when the corporation has no physical presence in Iowa but receives revenue from entities that do business within the state. In *KFC Corp.*, we determined that an out-of-state corporation that licenses its intellectual property to in-state entities has a taxable nexus with the state under Iowa Code section 422.33. 792 N.W.2d at 328. In this case, we must determine whether Myria lacks a taxable nexus with the State of Iowa for tax year 2009 because it meets the standard for exemption under section 422.34A(5).

**A. Background Rules and Principles.** In Iowa, an affiliated corporation may join a consolidated return to the extent its income is taxable under Iowa Code section 422.33 but cannot join the return if it is exempt from taxation. *Id.* § 422.37(2)–(3); *see also* Iowa Admin. Code r. 701—53.15. An affiliated corporation's income is taxable under Iowa Code section 422.33 if the corporation has both a taxable nexus with the state and taxable net income. Iowa Code § 422.33(1). If a common parent lacks a taxable nexus with Iowa or does not receive taxable income, it may designate a subsidiary that is subject to Iowa's income tax to act on the consolidated group's behalf. *See* Iowa Admin. Code r. 701—53.15(1).

Iowa Code section 422.34A exempts a foreign corporation from having a taxable nexus with the state for purposes of Iowa Code section 422.33(1) if its activities amount to "[o]wning and controlling a subsidiary corporation" and the corporation lacks a physical presence in the state

related to its ownership or control. Iowa Code § 422.34A(5). "Corporation" is a defined term that includes "partnerships and limited liability companies taxed as corporations under the Internal Revenue Code." *Id.* § 422.32(4).

The parties agree that Myria is a parent company lacking a physical presence in Iowa related to its ownership and control. Our resolution of this case therefore turns on whether the Department correctly concluded Myria's activities with NGPL and PipeCo constitute activities of "[o]wning and controlling a subsidiary corporation" within the meaning of Iowa Code section 422.34A(5).

**B. Interpretation of Section 422.34A(5).** When interpreting statutes, our primary objective is to ascertain the legislature's intent. *Branstad v. State ex rel. Nat. Res. Comm'n*, 871 N.W.2d 291, 295 (Iowa 2015). We begin with the statute's language. *Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212, 220 (Iowa 2016). If a word is not defined by the statute, however, we assign the word its common, ordinary meaning, interpreted within the context of the statute and its history. *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014). We do not extend, expand, or change the meaning of a statute under the guise of construction, even if we believe doing so would mitigate the hardship of a consequence or if we question the statute's wisdom. *Reg'l Util. Serv. Sys. v. City of Mount Union*, 874 N.W.2d 120, 124 (Iowa 2016). We construe statutes "in light of the legislative purpose," *In re A.J.M.*, 847 N.W.2d 601, 605 (Iowa 2014) (quoting *State v. Erbe,* 519 N.W.2d 812, 815 (Iowa 1994)), and "give weight to explanations attached to bills as indications of legislative intent," *Homan v. Branstad*, 887 N.W.2d 153, 166 (Iowa 2016).

The terms "owning" and "controlling" as they are used in section 422.34A(5) are not defined by statute or interpreted in the associated regulations. Therefore, we assign to the words their common, ordinary meaning, in the context of the statute and its history. *See Bank of Am., N.A.,* 843 N.W.2d at 880.

*Black's Law Dictionary* defines "ownership" to mean "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others" and "implies the right to possess a thing, regardless of any actual or constructive control." *Ownership, Black's Law Dictionary* (10th ed. 2014). "Control" is defined as "[t]he direct or indirect power to govern the management and policies of a person or entity, whether through ownership of voting securities, by contract, or otherwise; the power or authority to manage, direct, or oversee." *Control, Black's Law Dictionary.* Thus, as used in Iowa Code section 422.34A, we conclude "owning . . . a subsidiary corporation" plainly means the holding of a possessory interest in the subsidiary that provides the owner the right to use and manage it. In this context, the phrase "controlling a subsidiary corporation" plainly means the holding or exercising of the power or authority to directly or indirectly manage, govern, or oversee the management and policies of a subsidiary.

In interpreting statutes we generally "give weight to explanations attached to bills as indications of legislative intent." *Homan,* 887 N.W.2d at 166. Iowa Code section 422.34A was adopted to permit foreign corporations to carry on activities that "are very meager in effect" without acquiring a taxable nexus in Iowa. *See* H.F. 2166, 76th G.A., explanation (Iowa 1995). Given the legislature's explanation of the statute and the plain meaning of the words used in it, we conclude the purpose of the legislation was to establish a safe harbor for foreign

corporations lacking a physical presence in Iowa to engage in activities of ownership and control of their subsidiaries doing business here without establishing a nexus for purposes of income taxation. Our interpretation of Iowa Code section 422.34A(5) as exempting activities of using, managing, and enjoying a subsidiary (ownership) and managing, directing, and overseeing a subsidiary (control) is consistent with this purpose.

We also construe statutes harmoniously with other "statutes relate[d] to the same subject matter or to closely allied subjects." *State v. McSorley*, 549 N.W.2d 807, 809 (Iowa 1996) (per curiam). The plain meaning of "owning" and "controlling" in Iowa Code section 422.34A(5) aligns smoothly with the legislature's treatment of the concepts of ownership and control within our rules of law governing business corporations and LLCs. In the corporate context, Iowa Code section 490.801 vests the power to manage, direct, and oversee the entity in the hands of the board of directors or shareholders that have acquired all or part of the board's authority under Iowa Code section 490.732. Iowa Code § 490.801. Under our rules governing LLCs, the members (i.e. owners) are vested with the power to manage the entity or to oversee its management by managers. *Id.* § 489.407(1)–(3). In both contexts, an entity's owners may also hold the power of control—the right to manage, direct, and oversee the entity.

**C. Discussion.** In this case, the Group contends Myria is not exempt from taxation under section 422.34A(5) because Myria provided significant managerial, administrative, strategic planning, and financial support to NGPL and PipeCo in tax year 2009—functions the Group insists extend beyond or are distinct from activities of owning and

controlling a subsidiary corporation.[5]  The Group also asserts Myria has a taxable nexus with Iowa because it owns two types of intangible property with a situs in Iowa: shares of stock and money.

1. *Myria's activities.*  With respect to Myria's involvement with NGPL and PipeCo, the Group alleges Myria oversees the subsidiaries and extensively coordinates with them on matters related to tax compliance, financial reporting, intragroup distributions of earnings, and other legal and financial matters, as well as setting strategic priorities for the Group's underlying enterprises.  Further, the Group alleges Myria assists NGPL and PipeCo with day-to-day business operations, makes interest payments to lenders at each level of the parent–subsidiary hierarchy, and implements a tax allocation agreement providing "working capital" for the subsidiaries.  Although Myria has no employees, the Group contends the foreign corporation provides these services to NGPL and PipeCo through

---

[5]The Group argues that by virtue of the legal nature of LLCs, as a member of two Delaware LLCs, Myria's activities of management are distinct from activities of managing a subsidiary corporation.  In particular, the Group posits the ownership and management paradigm of an LLC is distinct from that of a corporation because while the owners of an LLC are typically active in its management (like partners in a partnership), the corporate form typically separates the functions of ownership and management. We reject this argument.  Our focus in determining whether Myria's activities fell within the safe harbor is upon the nature of the activities, not Myria's status as a member of the subsidiaries.

Moreover, the distinction Myria draws between the authority of shareholders in owning and controlling a corporation and the authority of members in owning and controlling limited liability companies is neither apt nor dispositive here.  While the Group is correct that it can actively participate in management as a member of a Delaware LLC, so too can the owners of some Delaware corporations.  *Compare* Del. Code Ann. tit. 6, § 18-402 (West, Westlaw current through 81 Laws 2017, ch. 2) (describing LLC member management), *with id.* tit. 8, § 354 (providing stockholders of a close corporation are permitted "to treat the corporation as if it were a partnership or to arrange relations among the stockholders or between the stockholders and the corporation in a manner that would be appropriate only among partners").  Because shareholders of some private corporations—like LLC members—can be active in the management of the entity they own, we cannot say as a matter of law that Myria's activities as a member extended beyond—or were distinct from—activities of ownership and control that can be undertaken by shareholders.

a management-services agreement with a third party and through the actions of Myria's board of directors.[6]

We conclude that the activities Myria performed for NGPL and PipeCo were all activities of owning and controlling a subsidiary corporation. As we have already noted, NGPL and PipeCo are considered subsidiary corporations for purposes of Iowa Code section 422.34A. The term "corporation" includes LLCs that are taxed as corporations by the federal taxing authority. *See* Iowa Code § 422.32(4). NGPL and PipeCo elected to be taxed as corporations in the Group's federal consolidated return, so we treat them as corporations for purposes of Iowa Code section 422.34A.

Myria's activities with NGPL and PipeCo are activities of ownership and control. As set forth above, the terms "owning" and "controlling" as they are used in Iowa Code section 422.34A(5) mean, respectively, the holding of the possessory right to use and manage a subsidiary and the holding of the power or authority to directly or indirectly manage, direct, or oversee a subsidiary's management and policies. Myria has a controlling ownership interest in PipeCo and NGPL by virtue of its eighty-percent ownership interest in PipeCo, the sole member of NGPL. In tax year 2009, Myria's agents performed various oversight and management

---

[6]The management-services agreement is between Myria and SteelRiver Infrastructure Management U.S., LLC, an investment-advisory and management-services company that manages an investment fund holding a twenty-three percent ownership interest in Myria. The management-services agreement under which the Group asserts Myria pays SteelRiver to provide management services to the Group is not in the record. As noted above, Jason Francl, SteelRiver's tax director and an officer and vice president of Myria, testified that he spends ten to twenty percent of his time working with legal, treasury, and accounting colleagues in overseeing and managing the Group's operations. We do not decide the significance of the fact that Myria did not provide direct services to the Group but instead contracted with a management company to do so. For purposes of this opinion, we assume without deciding that hiring a management company to provide services can constitute an "activity" under section 422.34A.

activities for the subsidiaries, including coordination of tax compliance and financial reporting; direction of intragroup distributions of earnings; assistance with other legal and financial matters; establishment of strategic priorities for the companies; and assistance with day-to-day operations, including the making of interest payments to lenders at each level of the parent–subsidiary hierarchy. All of these activities are routine features of a parent corporation's ownership and control of its subsidiary entities—features comfortably within the safe harbor from taxation established in section 422.34A(5) for foreign parent corporations without a physical presence in Iowa.

The Group further posits that Myria is subject to taxation because it provided "working capital" to the subsidiaries under the tax allocation agreement. Because the subsidiaries' tax obligations accrued daily but were paid to Myria on a quarterly basis, the Group contends Myria provided working capital to NGPL and PipeCo and thus engaged in an activity distinct from the routine functions of ownership and control contemplated by the safe harbor of section 422.34(5). We disagree. Under Iowa's tax regulations, Myria was responsible for filing any consolidated return on behalf of the Group because it was the common parent of the Group under federal income tax law. *See* Iowa Admin. Code r. 701—53.15; *see also* 26 C.F.R. § 1.1502-77(c) (2009). Myria's implementation of a tax allocation agreement in furtherance of its legal responsibility as parent is no less an activity of ownership and control than it would have been if Myria had required payments on a daily—not quarterly—basis. Given its substantial ownership stake in the entities and its resulting ability to exercise control over them, Myria had the power to dictate the coordination of the Group's payment of its consolidated tax liability and the timing of the intragroup transfers.

Accordingly, we conclude Myria's decision as parent to permit the subsidiaries to make payments on a quarterly basis does not remove it from the safe harbor of section 422.34A(5).

2. *Other nexus arguments.* We also reject the Group's contention that Myria has a taxable nexus with Iowa because it owns two types of intangible property with a situs in Iowa: shares of stock and money. The Department's regulations list both "shares of stock" and "money" as types of intangible property that may acquire a situs in Iowa. *See* Iowa Admin. Code r. 701—52.1(1)(*d*). Even assuming without deciding that Myria's ownership interests in the LLCs can be considered "shares of stock" within the meaning of rule 701—52.1(1)(*d*) and that such interests had an Iowa locus during the relevant tax period, they do not create a taxable nexus for Myria in Iowa. Iowa Code section 422.34A(5) clearly contemplates that an entity engaging in activities of owning a subsidiary corporation necessarily holds some evidence of its ownership interest. If the statute is to have any meaning or effect as a safe harbor, the certificates evidencing Myria's ownership interest in NGPL and PipeCo cannot themselves create a taxable nexus with the state sufficient to remove Myria from the safe harbor.

We also reject the Group's argument that Myria established a taxable nexus with the state by permitting its subsidiaries to use its "money" under the tax allocation agreement. We conclude the quarterly payments by the subsidiaries of amounts equal to their respective shares of the Group's income tax obligation did not constitute Myria's money with a situs in Iowa under rule 701—52.1(1)(*d*) promulgated by the Department. The payments were property of the subsidiaries transferred to Myria under the tax allocation agreement and paid to the taxing authority. And although the subsidiaries' obligations under the

agreement accrued daily and the payments to Myria were made quarterly, we conclude the temporal lag did not transform the payments to assets of Myria in the interim between the day the obligation accrued and the day the quarterly payments were made. During that interim, the funds remained the property of the subsidiaries. And, as we explained above, the tax allocation arrangement was well within the ownership-and-control safe harbor under section 422.34A(5).

3. *Summary.* Thus, we conclude all of Myria's activities with its subsidiaries doing business in Iowa were activities of owning and controlling NGPL and PipeCo within the meaning of section 422.34A(5) and Myria did not acquire a taxable nexus by virtue of owning "shares of stock" or "money" in Iowa. Because we conclude Myria lacked a taxable nexus with Iowa, we need not consider whether either the distributed earnings or payments under the tax allocation agreement would constitute taxable income within the meaning of section 422.33(1).[7]

## IV. Conclusion.

By electing to have PipeCo and NGPL taxed as corporations, the Group chose to receive not only the tax advantages of corporate taxation but any disadvantages, as well. The legislature has exempted from income taxation the activities of owning and controlling a subsidiary corporation under Iowa Code section 422.34A(5). All of Myria's activities with its subsidiaries doing business in Iowa in tax year 2009 were

---

[7]Our decision here is compatible with our holding in *KFC Corp.*, 792 N.W.2d 308. In *KFC Corp.*, we found that Iowa could tax a foreign corporation whose only connections with Iowa were franchise agreements in which it licensed its trademarks and systems to independent franchisees doing business in Iowa. *See KFC Corp.*, 792 N.W.2d at 324. Unlike the parent corporation in *KFC Corp.*, Myria received no royalty payments, license fees, or other earned fees in connection with an integral aspect of the affiliated group's business activities. *KFC Corp.* was decided under section 422.33(1) and did not address the range of activities constituting ownership and control of subsidiaries under section 422.34A(5), the focus of this case.

activities of owning and controlling a subsidiary corporation within the meaning of Iowa Code section 422.34A(5). Myria has not otherwise established a taxable nexus with the state. Thus, because Myria lacked a taxable nexus with the State of Iowa in tax year 2009, the Department correctly concluded Myria could not join the consolidated return.

We find no error in the Department's rulings. Accordingly, we affirm the district court's ruling on judicial review.

**AFFIRMED.**