# IN THE COURT OF APPEALS OF IOWA

No. 16-0416
Filed May 3, 2017


**ROMANTIX HOLDINGS, INC., ROMANTIX, INC., ABV MANAGEMENT, INC., BOOKS, INC., PPI, INC., PPA, INC., and SWAN BOOKS, INC.,**
Petitioners-Appellants,

**vs.**

**IOWA DEPARTMENT OF REVENUE,**
Respondent-Appellee.
_____


Appeal from the Iowa District Court for Polk County, Richard G. Blane II and Karen A. Romano, Judges.


A parent corporation and its subsidiaries appeal the district court's ruling on judicial review affirming the Iowa Department of Revenue's conclusions that the parent corporation was ineligible to join its subsidiaries' consolidated Iowa income tax returns because it had no taxable income in Iowa and that its subsidiaries could not claim certain expenses incurred and paid by the parent corporation. **AFFIRMED.**


Ronald L. Mountsier of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellants.

Thomas J. Miller, Attorney General, and Paxon J. Williams, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., and Doyle and McDonald, JJ.  Blane, S.J., takes no part.

**DOYLE, Judge.**

The Director (Director) of the Iowa Department of Revenue (Department) issued a final order concluding a parent corporation, Romantix Holdings, Inc. (Holdings), was ineligible to join its subsidiaries' (Iowa Subsidiaries) consolidated Iowa income tax returns because Holdings was not doing business in Iowa for purposes of inclusion on a consolidated tax return. It also concluded the Iowa Subsidiaries were ineligible to deduct certain expenses incurred and paid by Holdings. Holdings and the Iowa Subsidiaries (collectively Petitioners) petitioned for judicial review. Following judicial review, the district court affirmed the agency's final order. On appeal, Petitioners contend Holdings derived taxable income from the Iowa Subsidiaries entitling it to join the Iowa Subsidiaries' Iowa consolidated income tax returns. Additionally, it is argued that the Iowa Subsidiaries properly claimed the expenses of Holdings because the Iowa Subsidiaries were jointly and severally liable for payment of the expenses and "paid" the expenses by allocation. Upon our review, we affirm the district court's ruling denying and dismissing Petitioners' petition for judicial review and affirming the Director's order on remand.

## I. Standard of Review.

Our review of final decisions of the Department is governed by the Iowa Administrative Procedure Act, codified at Iowa Code chapter 17A (2015). *See* Iowa Code § 422.29; *KFC Corp. v. Iowa Dep't of Revenue*, 792 N.W.2d 308, 312 (Iowa 2010). Under section 17A.19, we must determine "[t]he validity of agency action . . . in accordance with the standards of review" set forth in that provision. Iowa Code § 17A.19(8)(b). We "give appropriate deference to the view of the

agency with respect to particular matters that have been vested by a provision of law in the discretion of the agency." *Id.* § 17A.19(11)(c). Section 422.68(1) gives the Director "the power and authority to prescribe all rules not inconsistent with the provisions of this chapter, necessary and advisable for its detailed administration and to effectuate its purposes." Consequently, we will uphold the Department's decision unless its interpretation is irrational, illogical, or wholly unjustifiable. *See id.* § 17A.19(10)(*l*); *Myria Holdings Inc. v. Iowa Dep't of Revenue*, ___ N.W.2d ___, ___, 2017 WL 1103175, at *3 (Iowa 2017). A decision is "irrational" if it is "not governed by or according to reason," illogical if it is "contrary to or devoid of logic," and "unjustifiable" if "it has no foundation in fact or reason." *The Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 432 (Iowa 2010).

## II. Background Facts and Proceedings.

Holdings is a holding company that owns and operates numerous subsidiaries as well as the Romantix trademark. Each individual subsidiary performs a function in the overall business. Some subsidiaries own Romantix™ adult book stores, nine of which are located in Iowa, which sell apparel, novelties, lubricants, lotions, books, magazines, and DVDs. Another subsidiary, Romantix Inc. (Inc.), acts as a management company. All the revenue from the stores is transferred to Inc. daily, and Inc. then uses this money to pay the stores' expenses. Another subsidiary, RMI Aviation (RMI), owns an airplane and an airplane hangar. The airplane is used by the Midwest stores for business travel. Inc. uses the funds received from the stores that utilized their services to pay

RMI's expenses. Holdings does not, by itself, sell products or provide services in Iowa.

The current owner of Petitioners, Steven Brown, acquired ownership in a transaction dated September 26, 2007. As part of the acquisition transaction, a number of documents and agreements were executed, including a stock redemption agreement, a loan agreement, a redemption note, a subsidiary guaranty, and a security agreement. The transaction involved two steps: Brown personally bought 100 shares of stock in Holdings from Edward Wedelstedt, and Holdings redeemed from Wedelstedt the remaining shares Wedelstedt owned in Holdings. The redemption was financed by debt incurred by Holdings; the debt was payable in monthly installments over a course of 15 years and had an interest rate of 8.5%. None of the subsidiaries owned by Holdings bought any of the shares from Wedelstedt, but all the Iowa Subsidiaries agreed to guaranty the debt. Also, included in the stock redemption agreement was a covenant not to compete. The covenant prohibited Wedelstedt from opening a competitive store within 25 miles of any of the stores that were part of the purchase agreement, including the nine Iowa stores. In exchange for the covenant not to compete, Holdings agreed to pay $100,000 per year for 15 years. The Iowa Subsidiaries guaranteed this debt as well.

At issue here are the 2009 and 2010 consolidated Iowa income tax returns of the Iowa Subsidiaries. The 2009 Iowa consolidated return included Holdings and all of its subsidiaries (including non-Iowa subsidiaries), but did not include the interest and amortization as an expenses for the subsidiaries because the entirety of the expense was allocated to Holdings. The 2010 consolidated Iowa

return included Holdings' Iowa subsidiaries, but not Holdings, and the interest and amortization expenses were allocated to the Iowa Subsidiaries based on a percentage of revenue approach. The Department apparently disallowed the expenses, and Petitioners filed a protest. A hearing was held before an administrative law judge (ALJ). The ALJ reversed the Department's income tax assessments pertaining to the expenses. The Department appealed the ALJ's proposed decision to the Director. The Director issued a final order ruling that Holdings should not be included on the Iowa Subsidiaries' consolidated Iowa income tax returns and that the Iowa Subsidiaries were not allowed to deduct Holdings' acquisition debt and covenant not to sue expenses because the subsidiaries did not owe and did not pay the expenses.

Petitioners filed a petition for judicial review. The district court found that "the Director's finding that Iowa Subsidiaries did not owe the [acquisition and covenant not to compete] debt is not supported by substantial evidence." The court remanded the matter to the Director "to give more specific reasoning for why the individual statutes and rules cited by Petitioners when applied to the facts of this matter do not allow Petitioners to make the desired deduction." The court affirmed the Director's finding that Holdings is not subject to Iowa income tax and is therefore prohibited from being included in the Iowa Subsidiaries' consolidated tax return.

On remand, the Director concluded in her final order that "[b]ecause the Iowa subsidiaries are not the primary obligors under the Loan Agreement, [Petitioners] fail the first test for deductibility of the acquisition interest." The Director also concluded "[Petitioners] have failed to meet their burden to

establish that the covenant not to compete was acquired, directly or indirectly, by the Iowa [S]ubsidiaries." The Director ordered that the Iowa Subsidiaries were not entitled to deduct interest and amortization expenses related to redemption of Holdings stock.

Taking issue with a number of the Director's conclusions, Petitioners again filed a petition for judicial review. The district court concluded:

> While the Director erred in failing to recognize the Iowa Subsidiaries as primary obligors of the acquisition debt, the Director, in noting the Iowa Subsidiaries' failure to pay the expenses originally allocated to Holdings, provided a proper basis for the Iowa Subsidiaries to nevertheless be unable to deduct the expenses.

The court denied and dismissed Petitioner's petition and affirmed the Director's order on remand.

Petitioners appeal.

### III. Discussion.

On appeal, Petitioners argue that because the Iowa Subsidiaries do business within Iowa, Holdings, in effect, does business within Iowa and should therefore be included for taxation purposes in the consolidated Iowa tax returns. Additionally, Petitioners argue that even if Holdings is not included, the Iowa Subsidiaries are responsible for and paid the disputed expenses. We address their arguments in turn.

### A. Including Holdings in Consolidated Return.

Petitioners contend Holdings is not exempt from taxation under Iowa Code section 422.34A(5) because it "directly owned intangible property that was utilized by its subsidiaries in the subsidiaries' Iowa business activity," which they

argue "has the functional equivalent of physical presence in the state that relates to the ownership or control of the subsidiary." A similar argument was raised and recently rejected by the Iowa Supreme Court in *Myria Holdings Inc.*, ___ N.W.2d at ___, 2017 WL 1103175, at *6.

In *Myria Holdings Inc.*, Myria and its subsidiaries argued Myria had a taxable nexus with Iowa because its subsidiaries did business in Iowa and because it owned "two types of intangible property with a situs in Iowa: shares of stock and money." *Id.* at *7. First, the court concluded that the activities Myria performed for its Iowa subsidiaries "were all activities of owning and controlling a subsidiary corporation," removing Myria from the safe harbor of section 422.34A(5), since the "legislature has exempted from income taxation the activities of owning and controlling a subsidiary corporation under Iowa Code section 422.34A(5)." *Id.* at *7-8. Second, the court concluded section 422.34A(5)

> clearly contemplates that an entity engaging in activities of owning a subsidiary corporation necessarily holds some evidence of its ownership interest. If the statute is to have any meaning or effect as a safe harbor, the certificates evidencing Myria's ownership interest in [its subsidiaries] cannot themselves create a taxable nexus with the state sufficient to remove Myria from the safe harbor.

*Id.* at *7. Similarly, the court determined Myria did not establish a taxable nexus with the state by permitting its subsidiaries to use its "money" under the tax allocation agreement, explaining "the quarterly payments by the subsidiaries of amounts equal to their respective shares of [Myria's and its subsidiaries'] income tax obligation did not constitute Myria's money with a situs in Iowa under rule 701-52.1(1)(d) promulgated by the Department." *Id.* at *8. The court therefore

concluded "all of Myria's activities with its subsidiaries doing business in Iowa were activities of owning and controlling [its subsidiaries] within the meaning of section 422.34A(5) and Myria did not acquire a taxable nexus by virtue of owning 'shares of stock' or 'money' in Iowa." *Id.*

Based upon the court's ruling in *Myria Holdings Inc.*, it is clear the Iowa Subsidiaries and their intangible property are not enough to establish a taxable nexus with Iowa sufficient to remove Holdings from the safe harbor. *See id.* at *7-8. Like Myria, by electing to have the Iowa Subsidiaries taxed as corporations, Holdings chose to receive not only the tax advantages of corporate taxation but any disadvantages as well. All of Holdings's activities with its subsidiaries doing business in Iowa in the relevant tax years were activities of owning and controlling a subsidiary corporation within the meaning of Iowa Code section 422.34A(5). Holdings has not otherwise established a taxable nexus with the state. Thus, because Holdings lacked a taxable nexus with the State of Iowa in relevant tax years, the Department correctly concluded Holdings could not join the consolidated return. We therefore affirm on this issue.

### B. Payment of Expenses by the Iowa Subsidiaries.

Petitioners also argue that regardless of whether Holdings could join the consolidated return, the Iowa Subsidiaries should be able to claim the disputed expenses for several reasons. First, Petitioners assert Holdings allocated the disputed expenses to the Iowa Subsidiaries for tax purposes. However, mere allocation is not enough under Iowa's taxation structure, as detailed by the Director:

> The allocation of expenses by Holdings is not binding on Iowa for tax purposes. *See* Iowa Admin. Code r. 701-53.15(6)(c) (stating that no agreement entered into among members of the affiliated group shall have the effect of reducing the Iowa tax liability of the members subject to Iowa's income tax). The way [Holdings] may choose to treat [Holdings's] expenses on internal reports or reports to creditors is not binding on Iowa for tax purposes. *See* [*id.*]

Additionally, Petitioners contend the Iowa Subsidiaries could claim the disputed expenses because the expenses were paid by the Iowa Subsidiaries. Petitioners first assert they were not on notice that the Department's decision was based upon the Iowa Subsidiaries' failure to pay the expenses; rather, they argue the Department only provided notice that its decision was based upon the fact the Iowa Subsidiaries did not owe the expenses. Petitioners claim their alleged lack of notice meant the Department, and then the district court on review, could not reject the expenses because the Iowa Subsidiaries did not pay the expenses.

Upon our review of the record, it is clear the Department's position was that expenses not owed[1] and paid by the subsidiaries could not be claimed as expenses of the subsidiaries. In fact, there is nothing in the record that indicates Petitioners ever claimed, until the hearing, that the Iowa Subsidiaries paid the

---

[1] The district court found that "the Director's findings that the Iowa Subsidiaries did not owe the debt is not supported by substantial evidence, as the security agreement shows that all of the individual subsidiaries which make up the Iowa Subsidiaries agreed to the terms and conditions set out in the loan agreement." The Director's order on remand ignored this ruling. In its ruling on judicial review from the Director's order on remand, the district court reversed the Director's ruling that the Iowa Subsidiaries are not primary obligors and did not owe the acquisition debt. No doubt the Department did not appeal from this adverse ruling because the district court denied and dismissed Petitioners' petition for judicial review. On appeal, the Department continues to assert that "[b]eing guarantors for the loan from Wedelstedt to Holdings does not entitle the [Iowa Subsidiaries] to deduct the loan expenses as their own." Having concluded the Iowa Subsidiaries did not pay the disputed expenses, we need not decide the issue of whether the Iowa Subsidiaries, as guarantors, were entitled to take a deduction for the interest on the loan obligation.

disputed expenses. The Department could not formally reject an assertion that was never made by Petitioners. Moreover, Petitioners had the burden of proving the Iowa Subsidiaries actually paid the disputed expenses. *See* Iowa Code § 421.60(6)(c).

At the hearing before the ALJ, counsel for the Department, in her opening statement, explained the Department's position was that because the Iowa Subsidiaries did not pay the claimed expenses—rather Holdings paid the expenses—the Iowa Subsidiaries were not permitted to deduct the expenses. The president of Holdings, Steven Brown, testified at the hearing that Holdings itself did not conduct business directly as an entity, explaining, "Well, there's no sales and no checks being written other than for the notes. The line of credit is held by [Holdings] because that's the ultimate company. The bank wants it that way." The Department tried to clarify whether Holdings or one of its subsidiaries paid the claimed expenses, and the following exchange with Brown occurred:

> Q. And you stated [Holdings] has no sales, writes no checks, except for it has a line of credit, and then also it, I think you testified—and I just want to clarify—that they did write checks, then, on the acquisition, and for that you're referring to these various agreements that are exhibits, the stock redemption agreement and the loan agreement and the loan that was taken—the note that was taken? A. The loan payments—well—
> Q. Were made by [Holdings]? A. Again, let me clarify. They don't write the checks. Romantix, Inc., writes the checks, but it's charged to them because the notes are set up in the Holdings.
> Q. Right. It's Romantix— A. We have an intercompany transaction.
> Q. [Holdings] gets paid? A. [Holdings], that's paid from Romantix.
> Q. Correct. A. Yeah.
> Q. Okay. I think we're— A. Yeah.
> Q. So in the [Holdings]'s exhibits, when it allocates interest— the interest that's at issue here, then it's based on something other than the amounts that those subsidiaries actually wrote checks for

and paid. A. I'm going to tell you how I think it is, and then maybe [the CPA that completed the tax returns] can make sure that I'm right.

The CPA was not specifically asked if Holdings or its subsidiaries paid the disputed expenses.

The ALJ found "Holdings makes payments on the principal and interest through funds generated by its subsidiaries." However, he concluded ultimately Petitioners "cannot be barred from claiming expenses paid by subsidiaries or the parent company that are part of the greater corporate structure doing business in Iowa," reversing the Department's tax assessments pertaining to the claimed expenses.

After the Department appealed the ruling to the Director, the Director factually found, in part of its ruling, that

> [a]ll revenue from sales by the stores comes into the subsidiaries that own them and then is transferred to [Inc.] on a daily basis. [Inc.] *uses those funds to pay expenses and allocates a paper expense to each subsidiary*. Some of the expenses are directly related to the subsidiary, e.g., salaries for employees who work at a store. Other expenses are more general, such as accounting and management, and are apportioned to subsidiaries based on a proportion of the revenue produced by the subsidiary.

(Emphasis added.) The Director went on to find, like the ALJ, that "Holdings makes payments on the principal and interest through funds generated by its subsidiaries." The Director concluded:

> The amounts at dispute include expenses for amortization of a non-compete agreement for the previous owner, [Wedelstedt], and expenses for interest on the debt from the acquisition of the business. The legitimate expenses incurred and paid by Holdings, pursuant to the redemption loan and agreement, cannot be deducted by other corporations. Neither the ALJ nor [Petitioners] have cited any federal or Iowa statute or rule that allows the

subsidiaries subject to Iowa income tax to deduct expenses that they never paid and that were not legally owed by them.

The Director explained the Department appropriately allowed the Iowa Subsidiaries to claim expenses they paid to another of Holdings's subsidiaries that did not do business in Iowa because they were the Iowa Subsidiaries' expenses, which they themselves paid.

> Although the Department allowed expenses related to Inc. and [RMI] as deductions for Holdings' subsidiaries subject to Iowa's income tax, they are easily distinguished from Holdings' interest and amortization expenses. The expenses allowed were for expenses of the subsidiaries and were paid by the Iowa [S]ubsidiaries for services received by the subsidiaries that were necessary for and benefitted the affiliates' business activities. As part of the management services, Inc.'s employees came into the state and oversaw activities of stores in Iowa. In the case of [RMI, RMI] owns an airplane that was used primarily for the . . . stores located in the Midwest. The Iowa [S]ubsidiaries pay [RMI] for its services and the Department allowed the subsidiaries to deduct their own expenses paid to [RMI] for services it provided to the subsidiaries, not Holdings' expenses.

We surmise from the above quoted paragraph that the Director was distinguishing Inc.'s payment of the subsidiaries' expenses from the expenses related to Holdings. Although Inc. may have actually cut the checks for Holdings's interest and amortization expenses, the Director did not find that Inc. paid Holdings's expenses.

The district court agreed with this distinction, finding "that these cases are different, as Iowa Subsidiaries pay the RMI related expense while Iowa Subsidiaries do not pay Holdings's expenses," and the court concluded substantial evidence showed "the checks written to pay the debt were charged to Holdings and Inc. only supplied the money to pay the debt." The court reasoned that because

deductibility requires that a taxpayer both owe the expense and pay it . . . , a taxpayer cannot claim a right to a deduction for expenses they owe but have not paid. Payment by the Iowa Subsidiaries was something Petitioners had to prove in order to clearly establish that the Iowa Subsidiaries were entitled to a deduction and that the Department acted erroneously. Petitioners did not do this.

The court concluded the Director's finding that the Iowa Subsidiaries failed to pay the expenses originally allocated to Holdings "provided a proper basis for the Iowa Subsidiaries to nevertheless be unable to deduct the expenses." Further, even if the internal allocation of the amortization expense amongst the Iowa Subsidiaries constituted "payment" of the expenses, the agency was correct in disallowing the deductions because the amortization expenses were not a "necessary and reasonable expense" of the subsidiaries in generating taxable income. *See* I.R.C. § 162 (allowing for deductions against income the "necessary and reasonable expenses" incurred in generating the income); *see also In re US Bancorp Piper Jaffray, Inc. v. Dep't of Revenue & Fin.*, No. 2002DORFC005, 2002 WL 32931969, at *3 (Iowa Dep't Inspections & App. May 14, 2002) (stating the general rule). Based on the record before us and the reasons stated by the district court, we agree. We therefore affirm on this issue.

### IV. Conclusion.

Because Holdings lacked a taxable nexus with the State of Iowa in relevant tax years, the Department correctly concluded Holdings could not join the consolidated return. Additionally, Petitioners did not establish the disputed expenses were paid by the Iowa Subsidiaries. Accordingly, we affirm the ruling of the district court denying and dismissing Petitioners' petition for judicial review and affirming the Director's order on remand.

**AFFIRMED.**