CLARENCE Q. URBAIN, appellant, v. JOSEPH SPEAK and MARY OUSLEY, guardian of JOSEPH SPEAK, appellees.

No. 51819.

(Reported in 139 N.W.2d 311)

January 11, 1966.

Eugene Willis, of Farley, and Klauer, Stapleton & Ernst, of Dubuque, for appellant.

William T. Connery, of Dubuque, for appellees.

Mason, J.—Clarence Q. Urbain brought this action in equity against Joseph Speak and his guardian for specific performance of a written contract for the sale by Speak to plaintiff of a residence property in the town of Epworth, Dubuque County. Trial to the court resulted in decree dismissing plaintiff's petition from which plaintiff has appealed.

The contract was prepared November 15, 1962, at the Epworth Savings Bank by Stanton Grotenhuis, vice-president and cashier. The sale price was $7500 payable $500 on execution of contract with balance upon delivery of a good and merchantable abstract, delivery and settlement to be effective on or before January 3, 1963. Upon execution of the contract Urbain de-

livered his $500 check drawn on Epworth bank to Speak, who endorsed and deposited it in the same bank. The check was honored. The contract was recorded December 13, 1962.

December 14 Speak's daughter, Mary Ousley, was appointed guardian of his property upon his voluntary application.

December 29 Urbain's attorney wrote Mary Ousley requesting the abstract for examination, advising her he and his client would be at her residence on January 3, 1963, to deliver a certified check for the purchase price balance in exchange for a warranty deed of the property described in the contract. January 2 guardian's attorney replied by letter she was not in position to accept the funds nor deliver the deed referred to, but did tender the abstract for examination.

Upon guardian's refusal to perform Urbain instituted this action for specific performance and accounting for rent, issues and profits from the land described in the contract from January 3, 1963.

Plaintiff alleged execution of the contract, down payment, performance of all conditions precedent including tender to guardian, which allegation was amplified by amendment. Defendant's answer denied generally the allegations of the petition as amended and alleged Joseph Speak lacked mental capacity to make the contract, inadequacy of purchase price and a willingness to return the $500 down payment. These allegations were denied in the reply.

The land involved was described in both the contract and petition as:

Lot 1 of Lot 2 of Lot 1 of Lot 7 and Lot 2 of Lot 8 both of the Subdivision of NE ¼ of SE¼ of Section 10, Township 88 N, Range 1 W of the 5th P. M.

Lot 1 of Lot 2 of Lot 11 and Lot 1 of Lot 1 of Lot 11 and Lot 1 of Lot 2 of Lot 10 of the Subdivision of NE ¼ of SE ¼ of Section 10, Township 88 N, Range 1 W of 5th P. M.

The property consisted of Speak's residence and an upstairs apartment, along with contiguous property in Epworth.

The trial court found the contract upon which plaintiff's action is based included property not then or subsequently owned by defendant Speak, the property not so owned being a part

of Lot 1 of Lot 2 of Lot 1 of Lot 7 of the Subdivision of the NE¼ of the SE¼ of Section 10, which portion was the Hall property.

Plaintiff testified he was willing to waive claim to any real estate described in the contract through error or otherwise which was in addition to the property within the area pointed out to him by Speak and within the boundaries testified to by plaintiff and was willing to waive any demand for performance with respect to such property.

The trial court denied plaintiff's proposed waiver as being indefinite and ineffective. In its decree the trial court failed to allude to the pleaded defenses, basing its refusal upon its inability to determine an exact description of the property involved. The court held that since the contract described property not owned by Speak, it lacked mutuality and specific performance was not available to plaintiff.

Plaintiff first discussed with Speak the purchase of the Epworth property about two years previous to November 15, 1962. Speak wanted $10,000 and plaintiff offered him $8000. Approximately one week before the contract was executed, Speak came to the plaintiff and told him he decided to take his offer of $8000. Plaintiff advised Speak he did not know if he could afford it at that time, he would have to see the bank. Within the week plaintiff made Speak the $7500 cash offer. Speak said he would accept the offer because he wanted to buy a house in Dubuque.

Approximately a week before the contract was signed Grotenhuis appraised the Speak property for loan purposes. Plaintiff accompanied Grotenhuis at the time. Speak pointed out the area Grotenhuis presumed should be described in the contract and took plaintiff and Grotenhuis through the house, pointing out the outlines of the property, the lots were fenced on the east and south sides and old Highway 20 or Main Street ran along the north side. Speak indicated the extent of the property to the west by pointing out landmarks in relation to other property. Grotenhuis testified Speak furnished the information he owned the property; told the witness he was ready to sell and while he did not specify the number of lots, he talked about the property to be covered and gave the witness the de-

scription. There was more than one lot, but it was all contiguous. Witness could not recall from which instrument the description was taken.

Plaintiff testified he got the dimensions of the property by measuring between the land lines pointed out to him by Speak. Approximately 160 feet of the Speak property fronts on Main Street with approximately 40 feet between the east side of the house and the east boundary line and approximately 80 feet from the west side of the Speak house to the east side of the next property owner who is Tom Hall. The west property line drops south approximately 100 feet to the end of the Hall property and then it extends westerly 175 feet to give a total width of 335 feet at the rear end of the Hall lot. The total depth of the lot is 600 feet from the sidewalk on Main Street to the south property line. He did not measure the width of the property at the south end.

After the contract was signed plaintiff took Speak to Dubuque at his request to get the abstract at Kintzinger's office. After the abstract was continued, it was delivered to plaintiff who in turn delivered it to Eugene Willis, his attorney.

I. As a proposition relied on for reversal plaintiff contends the trial court erred in finding the contract lacked mutuality because of the indefinite description in the contract, specifically that portion of Lot 1 of Lot 2 of Lot 1 of Lot 7 not owned by defendant Speak. Plaintiff asserts the question for our determination is whether the trial court was justified in concluding there was such lack of definiteness in the description as to deny the remedy of specific performance.

The terms of the contract were definite and certain except for the description which covered not only all the real estate owned by Speak in Epworth, but also a portion not then or thereafter owned by him. The evidence shows that in 1959 Speak and his then wife subdivided what was then known as Lot 1 of Lot 2 of Lot 1 of Lot 7 of the NE ¼ of the SE ¼ of Section 10. After being subdivided the parcel was known and recorded on the record as Lot 1 of Lot 1 of Lot 2 of Lot 1 of Lot 7 and Lot 2 of 1 of 2 of 1 of 7. The last parcel was sold by Mr. and Mrs. Speak February 21, 1959. Thereafter Speak did not own Lot 2 of 1 of

2 of 1 of 7. The agreement to sell covered Lot 1 of 2 of 1 of 7 which was a large parcel out of which Lot 2 of 1 of 2 of 1 of 7 was carved. It would appear at the time of the agreement Speak owned all of Lot 1, etc., except that part owned by Hall. The records of the Dubuque County assessor's office indicate the portion of Lot 1 owned by Joseph Speak would be correctly described as Lot 1 Subdivision of Lot 1 of Lot 2 of Lot 1 of Lot 7, etc. This same record indicates that Lot 2 of the Subdivision of Lot 1 of 2 of 1 of 7 was not owned by Speak. The description otherwise contained in the contract corresponds with this record.

 Except for the error in description we have a contract that can be enforced and, therefore, there is mutuality of obligation. Jasperson v. Bohnert, 243 Iowa 1275, 1278, 55 N.W. 2d 177, 178. Mutuality of remedy is not essential to an action for specific performance. See Gingerich v. Protein Blenders, Inc., 250 Iowa 654, 659, 95 N.W.2d 522, 525, where this court said:

"So far as the Iowa cases cited above in this division hold that mutuality of remedy is essential to an action for specific performance or, by inference and conversely, that if one party is entitled to the remedy the other must likewise be, they are overruled."

██ As stated, plaintiff commenced this action for specific performance. At the trial he offered to waive any claim or right to demand or performance with respect to any property that did not lie within the area pointed out by Speak, which in fact is that portion of Lot 1 owned by Hall. Plaintiff attached no conditions to his offer to accept specific performance. He did not contend in the trial court or here that he is entitled to an abatement of any part of the purchase price. His testimony constituted a sufficient offer to accept specific performance of such interest Speak had in the property described. Defendant failed to show plaintiff knew the contract contained property not owned by Speak when executed.

 "* * * [A]lthough the purchaser cannot have a partial interest forced upon him, yet, if he entered into a contract in ignorance of the vendor's incapacity to give him the whole, he is generally entitled to have the contract specifically performed,

590

as far as the vendor is able * * *. This is not making a new contract for the parties, since the vendor is not compelled to convey anything which he did not agree to convey * * *." Anderson v. Weirsmith, 209 Iowa 714, 727, 229 N.W. 199, 205.

A vendee may often compel specific performance where the vendor could not. Townsend v. Blanchard, 117 Iowa 36, 40, 90 N.W. 519, 520.

II. Plaintiff assigns no other error as a proposition for reversal.

The defendants cite six propositions relied on for affirmance. We have studied each of these propositions and given them careful consideration. They are not sufficient to support the action of the trial court.

Defendants' claim of mental incapacity of Mr. Speak cannot be sustained. Dr. Richard McKay first saw Speak May 20, 1960. He did not see him again until May 1963. The doctor testified, "I think it would be fair to say that he was not completely competent in November 1962." He had arteriosclerosis and damage to the frontal area of the brain that would continue to get progressively worse.

"To avoid the contract it must appear not only that Sterling was of unsound mind when it was made but that this unsoundness was such that he had no reasonable perception of the nature and terms of the contract. Mere mental weakness or unsoundness to some degree is not sufficient, in the absence of fraud or undue influence, to invalidate a contract." Sjulin v. Clifton Furniture Co., 241 Iowa 761, 763, 41 N.W.2d 721, 723, and citations; 17 C. J. S., Contracts, section 133(1); 2 Williston on Contracts, Third Ed. (Jaeger), section 256.

It is presumed Speak was sane when the contract was made and the burden rests on defendants to show he was incapacitated from making it. Evidence introduced on behalf of defendants does not sustain this burden.

III. The decree of the trial court is reversed and the cause remanded with direction to decree specific performance of the contract, describing the real estate to be conveyed as contained in the contract identified as exhibit one except that portion of Lot 1 described as Lot 2 of the Subdivision of Lot 1 of Lot 2 of

Lot 1 of Lot 7 of the NE ¼ of SE ¼ of Section 10 should be excluded from the description of the property to be conveyed.— Reversed and remanded with directions.

All JUSTICES concur except JUSTICE BECKER who takes no part.