# IN THE SUPREME COURT OF IOWA

No. 16–1974

Filed February 23, 2018

**BEVERLY GARDINER NANCE,**

Appellant,

vs.

**IOWA DEPARTMENT OF REVENUE,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

The Iowa Department of Revenue seeks further review of decision of court of appeals that allowed taxpayer to avoid state inheritance tax through a postmortem family settlement agreement. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

David M. Repp and F. Richard Lyford of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Donald D. Stanley Jr., Special Assistant Attorney General, and Hristo Chaprazov, Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether the court of appeals correctly held a taxpayer avoided an Iowa inheritance tax through a private postmortem family settlement agreement (FSA). The taxpayer's father-in-law, over five years before his death, signed a beneficiary form listing her as a contingent beneficiary of his brokerage account. That account transferred to her alone upon his death, and the Iowa Department of Revenue (IDOR) determined the estate owed the inheritance tax on the full account value. The decedent's grandchildren from his son's prior marriage sued the taxpayer, claiming they were entitled to the brokerage account under their grandfather's will. They alleged their grandfather had dementia and lacked the mental capacity to execute an enforceable beneficiary designation for his brokerage account. The taxpayer settled the lawsuit by transferring half the account value to the grandchildren under an FSA without any judicial determination of incapacity. She then sought a refund of part of the inheritance tax already paid. The IDOR denied the refund and determined the taxpayer failed to meet her burden to establish incapacity. The district court affirmed. The taxpayer appealed, and we transferred the case to the court of appeals, which reversed and held the FSA controlled the tax issue. We granted the IDOR's application for further review.

For the reasons explained below, we hold that the IDOR correctly denied the taxpayer's refund, and its refusal to give effect to the FSA was not irrational, illogical, or wholly unjustifiable. Without an adjudication of incapacity, the beneficiary designation transferred the brokerage account to the decedent's daughter-in-law upon his death, and the postmortem FSA was not binding on the IDOR and could not avoid the inheritance tax when the taxpayer failed to prove incapacity in the

IDOR's contested case proceeding. The contrary holding of the court of appeals would allow parties to evade inheritance taxes without an adjudication defeating facially valid beneficiary designations. We vacate the decision of the court of appeals and affirm the district court judgment that upheld the IDOR decision.

## I. Background Facts and Proceedings.

On August 17, 2003, Lester D. Gardiner Sr. and his wife, Mildred M. Gardiner, executed a transfer on death (TOD) agreement naming their only son, Lester Gardiner Jr., as the sole primary beneficiary of their brokerage accounts at Edward D. Jones. The TOD agreement designated their son's wife, Beverly Gardiner (now Beverly Gardiner Nance), as the sole contingent beneficiary. Lester Sr. was nearly age 92 when he signed the beneficiary designation. James Gibbons, a broker for Edward D. Jones, was present when the TOD agreement was executed and later testified that Lester Sr. and Mildred were mentally alert when they signed it. Beverly was not informed of her contingent designation at that time.

Lester Jr. had been married and divorced before he married Beverly in 1979. Lester Jr.'s three children from his prior marriage—Donald Gardiner, Donitta Gardiner, and Dianne Gardiner Green—are Lester Sr.'s only grandchildren. Donald, Donitta, and Dianne were the beneficiaries of Lester Sr.'s will, which he executed on November 22, 1988, nearly five years before he executed the TOD agreement.

Lester Sr. and Mildred moved into the Rowley Masonic Home in Perry in 2000 and resided in that nursing home until their deaths. Mildred died in 2004, and Lester Jr. died in 2007. On August 3, 2007—almost four years after Lester Sr. executed the TOD agreement—Beverly and Dianne filed an involuntary petition seeking the appointment of a

guardian and conservator for Lester Sr. One of his treating physicians opined in a signed statement that Lester Sr.'s "mental condition makes him incapable of caring for his own personal safety or provid[ing] for the necessities of life such as food, shelter, clothing and continuing medical care." Lester Sr. was declared unfit to manage his affairs on September 11, and Beverly and Dianne were appointed coguardians and coconservators. Lester Sr. died testate on January 31, 2009, at the age of 97.

After Lester Sr.'s death, his grandchildren, as coexecutors of his estate, sued Beverly, challenging the validity of the beneficiary designation form. They alleged that Lester Sr. lacked the requisite capacity to execute the form in August 2003 due to his dementia. Beverly denied the allegations, claiming Lester Sr. was competent when he and his wife signed the beneficiary designation over five years before his death.

While the lawsuit was pending, the estate timely filed an inheritance tax return on October 20, 2009. The estate paid the required inheritance tax of $18,988 based on the fact that Beverly received the full balance of the TOD brokerage accounts.

With the grandchildren's lawsuit pending, counsel for the estate retained Dr. Robert Bender to review the medical and nursing home records of Lester Sr. and his wife. Dr. Bender had never examined or seen Lester Sr. Dr. Bender opined in a June 21, 2010 letter that both Lester Sr. and his wife suffered from dementia. He noted that the records showed Lester Sr. "was found to have impairment in decision-making skills" by June 2002, and by November of that year, Lester Sr. "was often confused[] and unable to manage his own affairs." Based on his review of the records, Dr. Bender concluded that Lester Sr. was

incapable of understanding his finances and "was very vulnerable to undue influence being exerted on him by those around him." Lester Sr.'s grandchildren used Dr. Bender's opinion to support their claim that Lester Sr. lacked the requisite mental capacity to execute the beneficiary designation form in August 2003. Beverly found no expert who would opine to the contrary. However, Gibbons, the broker who was present when the TOD agreement was executed in 2003, testified at a deposition that he believed both Lester Sr. and Mildred to be mentally alert at the time.

On July 27, the grandchildren and Beverly settled their dispute in mediation and entered into an FSA. The IDOR was not a party to the FSA. The FSA provided that the brokerage accounts would be liquidated and the proceeds divided equally between Beverly and the estate. The proceeds had already been reduced by the inheritance tax payment, and the parties agreed that any tax refund would be divided equally between the estate and Beverly. The probate court approved the FSA on September 3 without any adjudication of Lester Sr.'s incapacity in 2003.

The estate filed an amended inheritance tax return on October 28. The estate requested a refund of $10,034 based on the FSA providing that half of the brokerage accounts were paid to Lester Sr.'s grandchildren. The estate claimed the proceeds passing by operation of the FSA to the grandchildren were exempt from inheritance tax under Iowa Code section 450.9 (2009) as property passing to Lester Sr.'s lineal descendants. The IDOR denied the refund on November 3. The estate protested the denial on December 29. The estate transferred any refund claim to Beverly. The estate was closed.

On June 26, 2013, the IDOR received a letter from Beverly's counsel requesting an informal conference. On July 24, 2014, Beverly

filed a formal written demand to initiate a contested case, and the IDOR filed an answer denying her right to a refund.

On November 24, a contested case hearing was held before an administrative law judge (ALJ). Beverly argued that the beneficiary designation was invalid, relying on Dr. Bender's letter opining that Lester Sr. was incompetent in August 2003 because he suffered from dementia.[1] Dr. Bender—who had not personally examined Lester Sr.— was not called as a witness at the contested case hearing. Beverly testified that she visited her father-in-law during the weekends at the nursing home. But she did not testify regarding her personal observations of Lester Sr.'s mental state at the time he executed the TOD agreement or at any other time.

The ALJ issued a proposed order on February 3, 2015. The ALJ found that the IDOR had subject matter jurisdiction over the issue of Lester Sr.'s competency to execute the TOD agreement because such determination would be necessary to decide whether a taxable event occurred. The ALJ concluded that the FSA, executed *after* the transfer of the accounts to Beverly through the TOD agreement, "ha[d] no bearing on whether a taxable event occurred when the Accounts passed to [Beverly]." The ALJ also determined that Beverly failed to prove by clear, convincing, and satisfactory evidence that Lester Sr. lacked sufficient mental capacity to execute the beneficiary designation. The ALJ concluded that upon Lester Sr.'s death the TOD accounts passed directly to Beverly and that the IDOR, therefore, properly denied the refund request.

---

[1]Beverly previously took the opposite position in the lawsuit filed by her stepchildren; before the parties settled, Beverly claimed that Lester Sr. was competent to execute the TOD agreement. Any undue influence on Lester Sr. in 2003 would have been exerted by his son, Lester Jr.—Beverly's husband.

Beverly appealed to the director of the IDOR. She filed a motion to allow witness testimony and a supporting brief, requesting the opportunity to present the oral testimony of Dr. Bender. The IDOR filed a resistance. The director granted Beverly's motion to allow witness testimony.

The director held an evidentiary hearing on January 14, 2016. Dr. Bender testified. He described the "mini-mental status examinations" used to evaluate a patient's cognitive abilities and elaborated on how Lester Sr.'s performance on such tests demonstrated his severe dementia. Dr. Bender concluded his direct testimony by stating, "My opinion is that [Lester Sr.] was cognitively incapable of understanding the document that he signed in August of '03, and that shouldn't have happened from the medical perspective." On cross-examination, Dr. Bender admitted that he did not remember ever personally examining Lester Sr. or Mildred or speaking to any of the treating physicians.

The director found that *In re Estate of Bliven*, 236 N.W.2d 366 (Iowa 1975), was controlling and, therefore, agreed with the ALJ that the FSA had no bearing on whether a taxable event occurred when the TOD accounts passed to Beverly. The director rejected Beverly's claim that *In re Estate of Van Duzer*, 369 N.W.2d 407 (Iowa 1985) (involving a spousal election against the will), controlled. The director noted that "the portion of the TOD that [Beverly] agreed to give to Decedent's beneficiaries under the Family Settlement Agreement passed not from Decedent's estate to the beneficiaries but from [Beverly] to the beneficiaries."

The director also determined the IDOR had subject matter jurisdiction over the issue of Lester Sr.'s competency and that Beverly

failed to meet her burden of proof on the issue of her father-in-law's alleged lack of capacity. The director reasoned,

> No physician or other medical practitioner who provided care to the decedent at the time that he executed the TOD testified at either the Administrative Law Judge or the Director hearing. In fact, no witness testified regarding any personal observations of the Decedent at the time he executed the TOD.
>
> At the hearing before the Director, Dr. Bender testified to explain his opinion regarding the significance of the Decedent's mini-mental status examination results. He also testified, based on his review of the mini-mental status examination results, it was his opinion that Decedent was not competent when he executed the TOD. However, Dr. Bender did not ever personally examine the Decedent. The oral testimony was consistent with the information provided to the Administrative Law Judge, however, it did not rise to the level of clear and convincing evidence that the contract should be set aside.
>
> Based on the foregoing evidence, the Protester has not met her burden to prove by clear, convincing, and satisfactory evidence that the Decedent was incompetent when he executed the TOD.

Beverly filed a timely petition for judicial review in the district court. The district court agreed with the director that *Bliven* controlled and that the postmortem FSA had no effect on the amount of inheritance tax owed. The district court concluded that the assets covered by the TOD agreement passed to Beverly at the moment of Lester Sr.'s death, and "any entitlement to those assets by his grandchildren was created after his death by virtue of the family settlement agreement." The district court affirmed the decision of the IDOR denying Beverly's request for a refund of inheritance tax.

Beverly appealed, and we transferred the case to the court of appeals. The court of appeals concluded that *Van Duzer*—not *Bliven*—controlled and that the FSA changed how half of Lester Sr.'s brokerage accounts passed upon his death. As a result, the court determined that

the settlement proceeds paid to the grandchildren under the FSA were exempt from inheritance tax. The IDOR filed an application for further review, which we granted.

## II. Standard of Review.

"Our review is governed by the standards set forth in Iowa's Administrative Procedure Act, chapter 17A." *Lange v. Iowa Dep't of Revenue*, 710 N.W.2d 242, 246 (Iowa 2006). "In exercising its judicial review power, the district court acts in an appellate capacity." *Iowa Ag Constr. Co. v. Iowa State Bd. of Tax Review*, 723 N.W.2d 167, 172 (Iowa 2006) (quoting *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 463 (Iowa 2004), *superseded by statute on other grounds*, 2004 Iowa Acts 1st Extraordinary Sess. ch. 1001, §§ 12, 20, *as recognized in JBS Swift & Co. v. Ochoa*, 888 N.W.2d 887, 890, 898–900 (Iowa 2016)). "When we review the district court's decision, 'we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court.'" *Id.* (quoting *Mycogen Seeds*, 686 N.W.2d at 464). If we reach the same conclusions, we affirm; if not, we reverse. *Id.*

The fighting issues here turn on the IDOR's factual determinations and application of law to those facts. We may grant relief if the taxpayer's substantial rights have been prejudiced because the agency action is

> [b]ased upon a determination of fact clearly vested by a provision of the law in the discretion of the agency that is not supported by substantial evidence in the record before the court when that record is viewed as a whole.

Iowa Code § 17A.19(10)(*f*); *see also Iowa Ag Constr. Co.*, 723 N.W.2d at 173 (concluding that factual determinations regarding the applicability of certain sales tax exemptions were clearly vested by a provision of law in the discretion of the agency when "[t]he case was tried as a contested

case proceeding in which factual findings were made based on evidence produced"). For purposes of our review,

> "Substantial evidence" means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

Iowa Code § 17A.19(10)(*f*)(1). "In assessing evidentiary support for the agency's factual determinations, we consider evidence that detracts from the agency's findings, as well as evidence that supports them, giving deference to the credibility determinations of the presiding officer." *Lange*, 710 N.W.2d at 247; *see also* Iowa Code § 17A.19(10)(*f*)(3).

"Because factual determinations are by law clearly vested in the agency, it follows that application of the law to the facts is likewise vested by a provision of law in the discretion of the agency." *Iowa Ag Constr. Co.*, 723 N.W.2d at 174; *see also Mycogen Seeds*, 686 N.W.2d at 465. We therefore can only reverse the agency's application of the law to the facts if we determine the application was "irrational, illogical, or wholly unjustifiable." *Iowa Ag Constr. Co.*, 723 N.W.2d at 174 (quoting Iowa Code § 17A.19(10)(*m*) (allowing a court to reverse when the challenger's substantial rights have been prejudiced by the agency's "irrational, illogical, or wholly unjustifiable" application of law to fact)).

We review decisions on statutory interpretation for correction of errors at law. *Branstad v. State ex rel. Nat. Res. Comm'n*, 871 N.W.2d 291, 294 (Iowa 2015).

### III. Analysis.

We must decide whether the IDOR properly denied Beverly's refund claim. We conclude that an FSA is ineffective to alter the inheritance tax consequences of a TOD agreement when the taxpayer unsuccessfully

challenges the validity of that transfer. In the contested case proceedings, Beverly litigated and lost her claim that Lester Sr. was mentally incompetent in August 2003 when he executed the TOD agreement and beneficiary designation. She had the burden of proof, and we must uphold that agency determination under our standard of review. The IDOR therefore correctly determined that the brokerage accounts transferred to Beverly under the TOD agreement as nonprobate assets upon Lester Sr.'s death. The postmortem FSA under these circumstances could not retroactively avoid the inheritance tax liability. The IDOR properly denied Beverly's refund claim.

Because Beverly's challenge to the TOD agreement failed, the transfer and resulting inheritance tax liability accrued upon Lester Sr.'s death. *See In re Estate of Myers*, 825 N.W.2d 1, 6–7 (Iowa 2012). "Nonprobate assets are interests in property that pass outside of the decedent's probate estate to a designated beneficiary upon the decedent's death." *Id.* at 6. "[T]hese assets are the personal property of the grantor *before* death, [but] they become the personal property of the designated beneficiaries upon the grantor's death pursuant to a contract between the grantor and the administrator of the account." *Id.* at 6–7. The brokerage accounts, therefore, became Beverly's personal property immediately upon Lester Sr.'s death, pursuant to the TOD agreement.

Iowa's "inheritance tax is a tax on the *receipt* of property from a decedent." *Tremel v. Iowa Dep't of Revenue*, 785 N.W.2d 690, 694 (Iowa 2010) (emphasis added). The inheritance tax differs from an estate tax, which "is a tax on *property* held by a decedent at the time of death." *Id.* (emphasis added); *see also Estate of Dieleman v. Iowa Dep't of Revenue*, 222 N.W.2d 459, 460 (Iowa 1974) ("Unlike the federal estate tax, which is a tax upon decedent's estate, the inheritance tax is a tax upon each right

of succession . . . ."). Real estate and tangible personal property located in Iowa and intangible personal property owned by a decedent domiciled in Iowa are subject to the inheritance tax. Iowa Code § 450.2.

The inheritance tax is imposed on "any property passing . . . [b]y deed, grant, sale, gift, or transfer made or intended to take effect in possession or enjoyment after the death of the grantor or donor." *Id.* § 450.3(3). This means the brokerage accounts transferred by the TOD agreement are subject to the inheritance tax unless they meet the requirements for an exemption provided in the Code. *See id.* §§ 450.4, .9. The Code provides for an exemption for certain individuals.

> In computing the tax on the net estate, the entire amount of property, interest in property, and income passing to the surviving spouse, and parents, grandparents, great-grandparents, and other lineal ascendants, children including legally adopted children and biological children entitled to inherit under the laws of this state, stepchildren, and grandchildren, great-grandchildren, and other lineal descendants are exempt from tax.

*Id.* § 450.9. This exemption did not apply because the brokerage accounts passed to Beverly (who is not a lineal descendant) upon Lester Sr.'s death.

The FSA between Beverly and the estate divided the brokerage accounts between Beverly and Lester Sr.'s grandchildren. We therefore must determine what effect, if any, the FSA has on the inheritance tax. Regulations of the IDOR address family settlement agreements.

> Beneficiaries of an estate may contract to divide real or personal property of the estate, or both, in a manner contrary to the will of the decedent. The court of competent jurisdiction may approve the settlement contract of the beneficiaries. However, the department is not a party to the contract and is not bound to compute the shares of the estate based on the settlement contract. Instead, the department must compute the shares of the estate based upon the terms of the decedent's will, unless a court of

competent jurisdiction determines that the will should be set
aside.

Iowa Admin. Code r. 701—86.14(2). This rule is not directly on point
here because the transfer at issue occurred through a TOD agreement,
not Lester Sr.'s will. But the principle of law embodied in the rule
applies independently—the IDOR is not bound by an FSA to which it is
not a party. However, there is tension in our caselaw as to when an FSA
may avoid inheritance taxes.

"We have established in our jurisprudence that family settlement
agreements are favored in law." *Gustafson v. Fogleman*, 551 N.W.2d 312,
314 (Iowa 1996). More broadly, Iowa has a well-established public policy
favoring the voluntary settlement of disputes.

> The law favors settlement of controversies. A settlement
> agreement is essentially contractual in nature. The typical
> settlement resolves uncertain claims and defenses, and the
> settlement obviates the necessity of further legal proceedings
> between the settling parties. We have long held that
> voluntary settlements of legal disputes should be
> encouraged, with the terms of settlements not inordinately
> scrutinized.

*Peak v. Adams*, 799 N.W.2d 535, 543 (Iowa 2011) (quoting *Waechter v.
Aluminum Co. of Am.*, 454 N.W.2d 565, 568 (Iowa 1990)). It can be
burdensome on families to require an adjudication of incompetency to
avoid an inheritance tax. Recognizing tax relief from an FSA avoids
costly litigation.

Yet we also note that "[t]ax exemption statutes are construed
strictly, with all doubts resolved in favor of taxation." *Sherwin–Williams
Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 424 (Iowa 2010)
(alteration in original) (quoting *Dial Corp. v. Iowa Dep't of Revenue*, 634
N.W.2d 643, 646 (Iowa 2001)). Additionally, we have long recognized
that the parties to an FSA providing for a different disposition than that

provided for in a will "do not determine to whom the title passes *from decedent*." *Seeley v. Seeley*, 242 Iowa 220, 225, 45 N.W.2d 881, 884–85 (1951) (holding that because the decedent's two sons entered into an FSA to renounce their gifts under the will, they took title as heirs, and one of the son's widow was entitled to her one-third distributive share of the real estate).

Against that backdrop, we review our precedent adjudicating claims that FSAs avoided inheritance tax liability.

**A. Effect of Family Settlement Agreements on Inheritance Taxes.** The IDOR claims *Bliven* applies and is dispositive, while Beverly argues *Van Duzer* controls the outcome of this case. We held the FSA did not avoid the inheritance tax in *Bliven* but did so in *Van Duzer* under different circumstances. Here, we conclude the agency's adjudication rejecting Beverly's challenge to Lester Sr.'s competency is fatal to her refund claim regardless of the terms of her FSA. We limit *Van Duzer* to its facts.

In *Bliven*, Amy C. Bliven tore up the document identified as her last will and testament. 236 N.W.2d at 368. A copy of the will showed that most of her estate was bequeathed to two out-of-state charities. *Id.* When Bliven died, her heirs at law contended that her will had been effectively revoked and that Bliven therefore died intestate. *Id.* The charities, however, claimed Bliven lacked the mental capacity to revoke her will. *Id.* To avoid litigation, the heirs and the charities stipulated that the will had been revoked and that Bliven died intestate. *Id.* The parties agreed to an estate distribution in which each charity received twenty-five percent of the estate. *Id.*

The executor filed an inheritance tax return indicating that the distribution to the charities was exempt from the inheritance tax. *Id.*

The executor claimed the assets going to the charities in accord with the settlement agreement "passed in any manner" under section 450.4 and, therefore, were exempt from taxation.[2] *Id.* The IDOR disagreed, claiming, among other things, that "title to property passing under the terms of a settlement agreement does not bypass those who would have taken under the statutes of intestate succession." *Id.* at 369.

We determined that upon Bliven's death, her property automatically passed to and title immediately vested in her heirs at law. *Id.* at 370. We also noted that "an heir's interest in property acquired by intestate succession is assignable and transferable immediately on the death by which it vests under the law of descent and distribution." *Id.* at 370–71. We recognized that any interest the charities obtained in property held by Bliven at the time of her death must have been obtained by conveyance or assignment from her heirs at law. *Id.* at 371. We concluded that the "inheritance tax exemption statute never came into play as to any right in said estate indirectly acquired . . . by these charitable organizations, i.e., *no inheritance, no exemption.*" *Id.* (emphasis added). The property rights acquired by the charities "passed to them only by assignment from [the] decedent's heirs, separate and apart from her death." *Id.* We determined under the Code in place at that time, that "passes in any manner" meant "passes in any manner by

---

[2]Section 450.4(2) provided that an inheritance tax shall not be collected

[w]hen the property passes in any manner to societies, institutions or associations incorporated or organized under the laws of this state for charitable, educational, or religious purposes, and which are not operated for pecuniary profit, . . . provided, however, that this exemption shall also include property passing to any society, institution or association incorporated or organized under the laws of any other state for charitable, educational or religious purposes, and which are not operated for pecuniary profit . . . .

Iowa Code § 450.4(2) (1971).

will or intestate succession directly from a decedent." *Id.* at 372 (quoting Iowa Code § 450.4(2) (1971)). As a result, we held that Bliven's entire estate passed by intestate succession to her heirs at law and was subject to the inheritance tax, absent any exemption under section 450.4. *Id.*

The IDOR argues that the holding in *Bliven* rests on two well-established propositions: (1) Iowa's inheritance tax is levied only on property passing from a decedent, so the inheritance tax *exemption* only applies to property passing from a decedent; and (2) interested parties cannot, by agreement, determine to whom property passed from a decedent. *See id.* at 371; *Seeley*, 242 Iowa at 225, 45 N.W.2d at 884–85 ("The contracting parties do not determine to whom the title passes *from decedent.*"). These principles apply here, and we conclude that *Bliven* is controlling. Title to the brokerage accounts immediately vested in Beverly upon Lester Sr.'s death under the TOD agreement. *See* Iowa Code § 633D.9 (2009) ("On the death of a sole owner or on the death of the sole surviving owner of multiple owners, the ownership of securities registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners."); *id.* § 633D.11(1) ("A transfer on death resulting from a registration in beneficiary form shall be effective by reason of the contract regarding the registration between the owner and the registering entity under the provisions of this chapter, and is not testamentary."); *see also Myers*, 825 N.W.2d at 7 (recognizing that pay-on-death accounts "become the personal property of the designated beneficiaries upon the grantor's death pursuant to a contract between the grantor and the administrator of the account"). The accounts were therefore subject to the inheritance tax, and no exemption applied.

The principle that the property in a TOD account becomes the property of the designated beneficiary immediately upon death presumes

a valid contract. Here, there has been no determination that the TOD agreement was invalid. The party challenging a contract based on lack of capacity bears the burden of proof. *See Urbain v. Speak*, 258 Iowa 584, 590, 139 N.W.2d 311, 315 (1966) (explaining that a person is presumed sane when the contract is made and the burden of proving otherwise rests on the person claiming incompetency); *see also Jackson v. Schrader*, 676 N.W.2d 599, 606 (Iowa 2003) (noting "the district court properly disposed of the competency issue on the ground that [the plaintiff] failed to show that [the party to financial transactions] lacked mental capacity" at the time she engaged in such transactions). The grandchildren settled with Beverly without any adjudication that Lester Sr. was incompetent to execute the TOD agreement. During the contested case proceedings, the ALJ determined that Beverly failed to prove Lester Sr. lacked sufficient mental capacity to execute the TOD agreement. The director agreed that Beverly did not meet her burden of proof. In its ruling on the petition for judicial review, the district court stated,

> As noted by both the ALJ and the director, the only proof [of Lester Sr.'s incompetency] offered by the petitioner was the opinions of Dr. Bender, someone who never examined or even observed Lester, Sr. at any point in time prior to his death. The only basis for his opinions was the aforementioned status examinations, which again were not administered by Dr. Bender. As the trier of fact in this contested case proceeding, it was the director's prerogative to weigh the evidence and make the ultimate decision on whether it met the aforementioned burden; that conclusion was n[ot] irrational, illogical or wholly unjustifiable.

(Footnote omitted.) The IDOR's finding regarding Lester Sr.'s competency was not challenged on appeal. That finding is supported by substantial evidence, and the IDOR's application of law to fact on the competency determination is not irrational, illogical, or wholly unjustifiable on this

record. We are bound by that determination. *See Iowa Ag Constr. Co.*, 723 N.W.2d at 173–74; *see also Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 191–92 (Iowa 2013) (discussing deference given to agency determinations in contested case adjudications). The TOD agreement is therefore valid, and the brokerage accounts became Beverly's property immediately upon her father-in-law's death.

As with the charities in *Bliven*, who had no right to property in the decedent's estate *but for* the settlement agreement, the grandchildren here had no right to the proceeds of the brokerage accounts *but for* the FSA. We have previously explained,

> The contracting parties do not determine to whom the title passes *from decedent*. . . .
>
> In legal effect the contracting parties convey title *from themselves* without resorting to the usual instruments of conveyance. The probate court shapes the administration so as to carry out the contract but by no theory or fiction of law does the title bypass the heirs or beneficiaries and pass direct from decedent to those designated by the contract.

*Seeley*, 242 Iowa at 225, 45 N.W.2d at 884–85. This remains true despite the language in the FSA providing that "the Grandchildren will inherit a portion of the Accounts."

Beverly argues that *Van Duzer* controls, and in that case, we held the FSA avoided inheritance tax. *See* 369 N.W.2d at 410. Charles Wayne Van Duzer executed an irrevocable *inter vivos* trust, which transferred farmland to two trustees. *Id.* at 408. The *inter vivos* trust gave the trustees absolute discretion to accumulate the trust income or distribute it to Van Duzer during his lifetime, but Van Duzer retained the power to dispose of the corpus of the trust through a general power of appointment exercisable by will and to appoint successor trustees. *Id.* The trust instrument provided that if Van Duzer died without exercising

the power of appointment, a life income interest in the trust would be created in his sister and nieces. *Id.* Upon their death, the corpus of the trust was to be distributed to certain designated beneficiaries. *Id.*

The next year, Van Duzer got married. *Id.* He died a few years later without exercising his power of appointment. *Id.* His "surviving spouse elected to take against the will," and she also "commenced an action against the estate alleging that the trust was illusory, failed *ab initio,* and that the trust assets were to be considered as part of the probate estate for purposes of computing her statutory share." *Id.* She entered into a settlement agreement with the executor of the estate, the trustees, and the beneficiaries of both the estate and the trust. *Id.* The surviving spouse received $106,500 pursuant to the settlement agreement. *Id.*

The IDOR included all of the trust corpus in its computation of the inheritance tax to be paid by the beneficiaries and did not allow the $106,500 paid to Van Duzer's surviving spouse to qualify for the spousal exemption. *Id.* The district court reversed the IDOR and determined that this amount qualified for the spousal exemption. *Id.* In affirming the district court, we distinguished *In re Estate of Wells*, 142 Iowa 255, 120 N.W. 713 (1909), and *Bliven.*

> The claimants in *Wells* were persons not named in decedent's will or otherwise entitled to claim against the estate. The same is true of the charities which were the claimants in *Bliven.* In the present case, the claim was made by the person who was the decedent's surviving spouse and, as such, entitled to a distributive share by reason of her election to take against the will. Her claim was against the executor and the gravamen thereof concerned the amount of such statutory share. While based upon various theories, all aspects of her claim involved the alleged invalidity *ab initio* of the *inter vivos* trust, a circumstance which, if correct, would increase the share passing to the surviving spouse.

*Van Duzer*, 369 N.W.2d at 410. We viewed the settlement agreement "as a *tripartite* agreement whereby the trustee agreed to return $106,500 to the estate, and the executor agreed to pay an identical sum to the surviving spouse in satisfaction of her distributive share." *Id.* We noted,

> It doubtless would have made a better record if separate checks were issued for this purpose, a deposit to the estate account had been documented and a court order had been obtained authorizing the payment of a distributive share in the sum agreed to in the settlement.

*Id.* But we agreed with the district court that such formality was not necessary "in order to recognize the transaction to be that which it clearly was." *Id.* We held the district court did not err in concluding that the payment of $106,500 to the surviving spouse qualified for the spousal exemption. *Id.* Beverly characterizes *Van Duzer* as giving effect to an FSA that dictated the inheritance tax consequences. The IDOR, however, reads the language regarding what "would have made a better record" as clarifying that the surviving spouse did not receive the money pursuant to the settlement agreement but instead received it from the decedent by claiming against the will. *See id.*

 *Van Duzer* recognized that the surviving spouse took the $106,500 by reason of her election to take against her husband's will, but the effect of the FSA increased her statutory share. *See id.* (noting that the executor would pay the amount "to the surviving spouse in satisfaction of her distributive share"); *cf. In re Estate of Spurgeon*, 572 N.W.2d 595, 598 (Iowa 1998) ("When testator died and his will was admitted to probate, the widow . . . had to make a choice: whether to accept the will and forego a statutory share, or to reject the will and take a statutory share instead. . . . The authorities are clear as to the effect of an election by a surviving spouse: a choice to take against the will is a genuine election

which nullifies gifts to the surviving spouse in the will but leaves the will to be carried out as to the other devisees as nearly as may be done." (quoting *In re Campbell*, 319 N.W.2d 275, 277 (Iowa 1982))). A spousal election to take against the decedent's will transfers title over the distributive share from the decedent to the surviving spouse. *See Watrous v. Watrous*, 180 Iowa 884, 898, 163 N.W. 439, 443 (1917) ("The surviving spouse has the absolute right to elect not to consent to the provisions of the will, the effect of which is to give such survivor absolutely an undivided one-third interest, in value, of all the property, real and personal, of which the deceased spouse died seised."). We conclude that *Van Duzer* is inapplicable here and limit its holding to spousal elections against the will.

The IDOR itself has limited its adherence to *Van Duzer* to spousal elections against the will, and in other inheritance tax cases that agency has continued to rely on *Bliven*. *See* Estate of Leland E. Robertson, Inheritance Tax Assessment Docket No. 86-402-3-A (1987). The legislature has not overruled either *Van Duzer* or *Bliven*. We can infer the legislature has acquiesced in their holdings interpreting Iowa Code section 450, such that FSAs cannot be used to avoid inheritance taxes except when a spouse elects against the will. *See In re Estate of Vajgrt*, 801 N.W.2d 570, 574 (Iowa 2011) ("The rule of stare decisis 'is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature . . . .' " (quoting *Iowa Dep't. of Transp. v. Soward*, 650 N.W.2d 569, 574 (Iowa 2002))); *see also Crane v. Mann*, 162 S.W.2d 117, 118 (Tex. Civ. App. 1942) ("[S]ince the year 1929 that Department has construed the Inheritance Tax Statue to place the tax on the entire estate passing by virtue of the will, regardless of any compromise agreement which permits a portion of the

estate to go to a contestant. That Departmental construction having been acquiesced in by the Legislature of Texas for more than twelve years is of itself persuasive and should not be overturned in the absence of strong reason therefor.").

*Van Duzer* is distinguishable for another reason—because there was no adjudication of the validity of the trust created by Van Duzer. The surviving spouse in *Van Duzer* did not litigate and *lose* on the issue of the trust's enforceability. By contrast, Beverly failed to meet her burden of proof to show that Lester Sr. lacked the capacity to execute the TOD agreement. Here, we have an adjudication that the TOD agreement was valid, and this controls how the property passed at Lester Sr.'s death. *Cf. Ind. Dep't of Revenue v. Estate of Binhack*, 426 N.E.2d 714, 715–16, 718 (Ind. Ct. App. 1981) (concluding that the court erroneously redetermined the amount of inheritance taxes based on a family settlement agreement, which provided that grandchildren who were excluded from and contested the will inherited part of the estate because "[t]he crucial fact remains . . . that the will . . . has never been set aside"); *Borish v. Zink*, 64 A.2d 461, 461 (N.J. Super. Ct. App. Div. 1949) (acknowledging that "[i]f the appeal from probate had been prosecuted to conclusion, the probate might have been reversed and the fact established that Mr. Borish died intestate" but noting that after the settlement agreement was reached, "the appeal was dismissed and the decree of the Orphans' Court conclusively establishe[d] the factum of the will[, so t]he transfers made by the will have taken effect and are taxable").

Beverly suggests that the determining factor in *Bliven* and *Van Duzer* was whether there was a bona fide dispute between the

parties, pointing out that the *Bliven* parties stipulated that the will was revoked. Beverly claims that

> [h]ad [the parties to the settlement agreement] not stipulated that the decedent's will had been revoked, the Iowa Supreme Court in *Bliven* would likely have ruled (as it did in *Van Duzer*) that the decedent's property "passed" to the charities by virtue of the settlement agreement rather than to the heirs under intestacy.

We disagree. In *Bliven* we stated,

> [W]e have searched chapter 450 in a futile effort to find therein any provision which even intimates a recognition of the passing of property rights from a decedent in any manner other than by terms of a will or intestate succession.

236 N.W.2d at 370. The 2009 version of chapter 450, which governs this case, applies to the passing of property rights from a decedent by virtue of TOD agreements but not by virtue of postmortem FSAs. *See* Iowa Code § 450.3. Beverly's argument also ignores the language in *Seeley* providing that "contracting parties do not determine to whom title passes *from decedent.*" *Seeley*, 242 Iowa at 225, 45 N.W.2d at 884–85; *cf. Ind. Dep't of State Revenue v. Estate of Pickerill*, 855 N.E.2d 1082, 1086 (Ind. T.C. 2006) ("[W]hen a family settlement agreement exists, how the agreement came into existence (i.e., whether or not litigation actually ensued or a claim was filed) does not change the fact that the agreement cannot alter the manner in which inheritance tax is imposed."). Our holding in *Seeley* corresponds with "[t]he majority view . . . that a succession tax is computable in accordance with the terms of the will, unaffected by [a] compromise agreement." *De Rosa v. Dir., Div. of Taxation*, 28 N.J. Tax 73, 78 (Tax. Ct. 2014) (quoting *Pope v. Kingsley*, 191 A.2d 33, 36 (N.J. 1963)); *see also Emanuelson v. Sullivan*, 161 A.2d 788, 790 (Conn. 1960) ("[T]he testator's property devolves by virtue of the probated will, even though its effect may have been changed

subsequently by those who took under it. The succession tax should, therefore, be computed and assessed on the basis of the disposition of the estate in the probated will. The weight of authority in other jurisdictions supports this rule."); *Crane*, 162 S.W.2d at 118 ("The other line of authorities, the majority, holds that where a contested will is probated by virtue of a compromise agreement all the property is to be considered as having vested at the death of the testator in accordance with the terms of the will, and hence the inheritance tax is to be computed upon all the property of the estate unaffected by the compromise agreement. We think this the sounder rule." (Citations omitted.)).

Additionally, while the *Bliven* parties stipulated that the will was revoked, the facts of *Bliven* still closely align with the facts presented here. Lester Sr.'s grandchildren challenged the TOD agreement, claiming their grandfather lacked capacity. They then compromised their claim by entering into the FSA, in which Beverly was allowed to keep half of the proceeds of the brokerage accounts. Similarly, in *Bliven*, the charities challenged the will revocation, claiming the decedent lacked the capacity to revoke her will. They also compromised their claim by entering into a settlement agreement. The charities in *Bliven* stipulated that the decedent's will had been revoked, even though the stipulation was inconsistent with their original claim of lack of capacity. In entering into the FSA, the grandchildren gave up their claim challenging the TOD agreement's validity.

> The Estate and the Grandchildren hereby release and acquit and forever discharge Beverly from any and all liability including all claims, demands, and causes of action of every nature affecting them which they may have or forever claim to have by reason of any and all matters relating to the Litigation described above.

> . . . .
>
> . . . [T]he parties agree that the Litigation shall be dismissed with prejudice, each party to bear its, his or her own costs.

The court of appeals noted "the estate's claim had sufficient merit to cause the parties to enter into an agreement requiring Beverly to forego one-half of the value of the brokerage accounts." But as that court acknowledged, "[o]ther factors exist that cause parties to reach a compromise beyond the likelihood of success at trial." While Beverly also released any claims she might have had relating to the litigation, the status quo meant that title to the brokerage accounts passed to her upon Lester Sr.'s death.

The court of appeals suggested that the IDOR may not have refused the refund "if the estate had presented overwhelming evidence that Lester D. Gardiner Sr. was incompetent." One might expect it would be easy to obtain an adjudication of incompetency when the evidence is overwhelming. But the estate settled its claims without proving Lester Sr.'s incompetency in probate court. Beverly in turn failed to prove Lester Sr.'s lack of mental capacity in the contested case hearing. She does not challenge the director's finding that Lester Sr. was competent, and that finding is binding on appeal. *Iowa Ag Constr. Co.*, 723 N.W.2d at 173.

The court of appeals also questioned whether the IDOR would have refused a refund "if there was overwhelming evidence the contract was the product of dependent adult abuse by undue influence." No dependent adult abuse is claimed here, and in any event, Beverly, who seeks the refund now, was the beneficiary of the alleged undue influence on Lester Sr.

**B. Adopting a Test for When Family Settlement Agreements Can Control Inheritance Tax Consequences.** Beverly suggested that in some circumstances, FSAs should control inheritance tax consequences. She advocated for a four-part test gleaned from federal cases: (1) the underlying claim was based on enforceable legal rights of the claimant, (2) the parties to the agreement were truly adversarial, (3) "the agreement was made in good faith as the result of arm's-length negotiations," and (4) there is no evidence suggesting the agreement "was entered into for post mortem tax planning purposes." *See Estate of Hubert v. Comm'r*, 101 T.C. 314, 318–21 (1993), *aff'd*, 63 F.3d 1083 (11th Cir. 1995), *aff'd*, 520 U.S. 93, 117 S. Ct. 1124 (1997). We note that the federal estate tax differs from Iowa's inheritance tax. *See Dieleman*, 222 N.W.2d at 460 ("Unlike the federal estate tax, which is a tax upon decedent's estate, the inheritance tax is a tax upon each right of succession and is chargeable upon the property each beneficiary receives."). Based on this distinction, the court of appeals rejected the federal test. The court of appeals created a two-part test for when an FSA can control inheritance tax consequences: (1) the agreement is entered into in good faith, and (2) "there is no evidence of a scheme to avoid taxes." This test incorporates the third and fourth prongs of the federal test.

As the IDOR points out, it is unclear what constitutes "evidence of a scheme to avoid taxes" (and we realize the same concern would arise under the fourth part of the federal test if we adopted it). The IDOR also points out that such evidence may be present here; the FSA provided that "[b]ecause the Grandchildren will inherit a portion of the Accounts, an amended Inheritance Tax Return shall be filed by the Estate seeking a refund." We decline to adopt either the federal test or the test created by the court of appeals. Estate planning should precede the testator's

death.  Moreover, even when family members have bona fide disputes, all gain when taxes are avoided because every dollar of inheritance tax avoided is a dollar that can be reallocated among the family members in the settlement.  In that sense, the parties are not truly adversarial as to the tax issue nor are the negotiations on that point truly arms' length. *Cf. Burditt v. Comm'r*, 77 T.C.M. (CCH) 1767, 1999 WL 185163, at *7 (T.C. 1999) (concluding that settlement proceeds allocated to petitioner "individually for mental anguish, pain and suffering, damage to his reputation and loss of good will" could not be excluded from petitioner's gross income as damages received on account of personal injuries because "the parties to the . . . settlement were not adversarial with respect to allocations made in the settlement agreement" and because "the written allocation . . . was not . . . made at arm's length, was entirely tax-motivated, and did not accurately reflect the claims at issue in the lawsuit").  Rather, the interests of the parties are aligned against the taxing authority based on their common interest in avoiding the tax.  We hold the FSA did not control the inheritance tax consequences after the taxpayer's challenge to the validity of the TOD agreement failed.

**IV.  Disposition.**

For these reasons, we vacate the decision of the court of appeals and affirm the judgment of the district court upholding the IDOR's denial of Beverly's inheritance tax refund claim.

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Wiggins, J., who concurs specially, and Mansfield, J., who dissents.

#16–1974, *Nance v. Iowa Dep't of Revenue*

**WIGGINS, Justice (concurring specially).**

I concur in the result. I agree with Justice Mansfield that the *In re Estate of Van Duzer*, 369 N.W.2d 407 (Iowa 1985), and *In re Estate of Bliven*, 236 N.W.2d 366 (Iowa 1975), decisions are irreconcilable. In my review of the tax statutes and regulations, I find no support to allow a private postmortem family settlement agreement, even if entered in good faith, to circumvent inheritance tax. I do not find the terms "passing to" and "passes" in Iowa Code sections 450.9 and 450.10 (2009) ambiguous. In those statutes, "passes" and "passing to" mean passing through an estate, not from a contract or a settlement agreement.

As Justice Mansfield notes, a federal regulation allows a private postmortem family settlement agreement entered in good faith to circumvent estate tax. Neither our court nor our court of appeals has the power or the authority to write such a provision in the law. Only the legislature or the executive branch through rulemaking has the power and authority to do so. Consequently, I agree with the result reached by the majority and would overrule *In re Estate of Van Duzer*.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. The terms "passing to" and "passes" in Iowa Code sections 450.9 and 450.10 (2009) are ambiguous. I would continue to follow the approach we took in *In re Estate of Van Duzer*, 369 N.W.2d 407 (Iowa 1985), and hold that property passes from the decedent to a beneficiary when it is transferred to that beneficiary pursuant to a good-faith settlement agreement resolving litigation over distribution of the decedent's assets. Therefore, I would affirm the decision of the court of appeals.

Federal estate tax law takes the same approach. *See* 26 C.F.R. § 20.2056(c)–2(d)(2) (2017) (indicating that the marital deduction is available following a will contest when property is assigned to a surviving spouse based on "a bona fide evaluation of the rights of the spouse"); *Estate of Hubert v. Comm'r*, 101 T.C. 314, 319–21 (1993) ("Although the regulations state that the settlement agreement will not *necessarily* be accepted as a bona fide evaluation of such rights, they do not require rejection of such settlement agreement. In this instance we think it is appropriate to recognize the amounts passing to Mrs. Hubert under the settlement agreement as passing from decedent, especially in the absence of any suggestion that the settlement agreement was entered into for post mortem tax planning purposes."), *aff'd*, 63 F.3d 1083 (11th Cir. 1995), *aff'd*, 520 U.S. 93, 117 S. Ct. 1124 (1997); *Estate of Barrett v. Comm'r*, 22 T.C. 606, 611 (1954) ("We find nothing in the statute or in logic that would deny similar treatment to a settlement payment made in advance of the contest where there is sufficient basis for a reasonable belief that only such payment would avoid a serious and substantial threat to the testamentary plan provided by the decedent.").

Notably, the relevant statutory language is similar in both contexts. In Iowa, inheritance tax is imposed (or not imposed) when property is "passing to" or "passes" to certain beneficiaries. Iowa Code §§ 450.9, .10(1)–(4). Under federal estate tax law, a marital deduction is allowed for any interest in property which "passes or has passed" from the decedent to his surviving spouse. *See* 26 U.S.C. § 2056(a) (2012). In both instances, the terminology is susceptible to more than one reasonable interpretation. *See In re Estate of Lamoureux*, 412 N.W.2d 628, 632 (Iowa 1987) (indicating that because the term "transfer" is used in both the federal estate tax and the Iowa inheritance tax, federal construction of the term "is applicable by analogy").

Significantly, our most recent case in this area, *Van Duzer*, gave effect to a settlement for inheritance tax purposes. There we held that an additional payment of $106,500 to a surviving spouse under a family settlement agreement was not subject to inheritance tax, because testamentary transfers to spouses were exempt. 369 N.W.2d at 409–10. We overlooked formalities and "recognize[d] the transaction to be that which it clearly was." *Id.* at 410.

It's true that in the earlier case of *In re Estate of Bliven*, 236 N.W.2d 366, 370–71 (Iowa 1975), we declined to give inheritance tax effect to a settlement. In that case, two charities had been essentially the sole beneficiaries of the decedent's will. *Id.* at 368. However, the decedent tore up her will before her death. *Id.* Subsequently, the charities brought a claim, contending the decedent had lacked the mental capacity to revoke her will. *Id.* The charities settled with the family on the basis that the charities would receive half the estate. *Id.* We held, regardless, that the amounts passing to the charities were not

exempt from inheritance tax under the charitable exemption. *Id.* at 370–71.

Van Duzer and *Bliven* are impossible to reconcile, in my view. Either you allow good-faith settlements for tax purposes or you don't. Nonetheless, in *Van Duzer,* we said that *Bliven* and another, older case[3] were "clearly distinguishable." 369 N.W.2d at 410. The asserted distinction was that the claimants in the earlier cases—unlike the surviving spouse in *Van Duzer*—would not have inherited *at all* from the estate but for the settlement. *Id.* (noting that the claimants in the earlier cases were "persons not named in decedent's will or otherwise entitled to claim against the estate"). That distinction seems forced to me. The critical similarity in both *Van Duzer* and *Bliven* is that the transfers *whose tax status was in dispute* would not have occurred without the settlement agreement. To my mind, *Van Duzer* therefore controls when the cases are irreconcilable because it is the more recent precedent.

Of course, if one accepts the distinction in *Van Duzer* at face value, the taxpayer still wins here. Here, the settlement beneficiaries, i.e., the lineal descendants Donald Gardiner, Donnita Gardiner, and Dianne Gardiner Green, were persons who stood to inherit from the decedent. In fact, they received additional inheritances beside the family settlement agreement.

The Department of Revenue itself has struggled to reconcile *Bliven* and *Van Duzer.* In 1987, it wrote to a taxpayer accepting a settlement for the following reasons:

> While the Department continues to rely on *In Re Estate of Wells* and *In Re Estate of Bliven* as authority for the tax treatment of out-of-court settlements, the Department recognizes that the Iowa Supreme Court's decision in *Van*

---

[3]*In re Estate of Wells*, 142 Iowa 255, 120 N.W. 713 (1909).

> *Duzer* does carve out an exception to the long-established rule enunciated in *Wells* and *Bliven*. . . .
>
>     . . . .
>
> While the legal theory used by the Court in *Van Duzer* is not readily apparent, it does appear that the Iowa Supreme Court is of the opinion that when a surviving spouse challenges the distribution to be made from an estate coupled with an election to take against the will, the settlement of the dispute is entitled to the spousal exemption and tax rates and status provided to surviving spouses by statute. The facts in the instant case being for all practical purposes the same as in *Van Duzer*, the Committee finds that the estate is entitled to the spousal exemption for the full amount of the $152,000 received by the surviving spouse.

Estate of Leland E. Robertson, Inheritance Tax Assessment Docket No. 86-402-3-A (1987). I disagree with this effort to confine *Van Duzer* to its narrowest set of facts and don't think you can read *Van Duzer* as just a "spousal exemption" case.

*Van Duzer* is also more faithful to the legislature's likely intent. *See* Iowa Code § 4.6(1). I presume the legislature cared most about who was actually receiving the decedent's property—whether it was a close relative (exempt), a charity (exempt), or someone else (not exempt). In addition, allowing parties to settle litigation in good faith without forfeiting tax benefits is sound policy. *See id.* § 4.4(3). It doesn't make sense to incentivize heirs to litigate among themselves to the end and delay the closing of estates.[4]

---

[4]Other states appear to be divided on whether a good-faith settlement can affect inheritance tax treatment. "In some jurisdictions, a state inheritance tax properly may be based on the terms of a contested will even where the contest results in a compromise or settlement agreement which changes the estate's distribution, and in others, the transfer of the property or interest under the compromise or settlement agreement may be considered." 42 Am. Jur. 2d *Inheritance, Estate, and Gift Taxes* § 81, at 277 (2010) (footnotes omitted); *see also* R.D. Hursh, Annotation, *Succession, Estate, or Inheritance Tax as Affected by Compromise of Will Contest*, 36 A.L.R.2d 917, § 2[a] (1954).

Another issue is whether we need to give deference to the Department of Revenue's interpretation of the term "passes" as used in Iowa Code section 450.10. *See* Iowa Code § 17A.19(10)(*c*), (*l*); *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 12–14 (Iowa 2010); *see also Myria Holdings Inc. v. Iowa Dep't of Revenue*, 892 N.W.2d 343, 347 (Iowa 2017) (declining to decide whether the Department of Revenue's interpretation of a different tax provision was entitled to judicial deference). I believe we do not need to do so because the agency's rule cites only *Bliven* and does not take into account or even mention *Van Duzer*. *See* Iowa Admin. Code r. 701—86.14(2). *Van Duzer*, as discussed, is the more recent case. In *State v. Iowa District Court*, we expressed skepticism about agency retroactive reinterpretations that conflict with prior judicial interpretations of statutes. *See* 902 N.W.2d 811, 819 & n.6 (Iowa 2017). While I do not know whether this particular rule came before or after *Van Duzer*, the plain fact is it doesn't attempt to address it.

The majority invokes the principle of legislative acquiescence in support of its position. *See In re Estate of Vajgrt*, 801 N.W.2d 570, 574 (Iowa 2011) ("The rule of stare decisis 'is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature . . . .' " (quoting *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 574 (Iowa 2002))). But what did the legislature acquiesce in? *Van Duzer* is the more recent decision, it is thirty-three years old, and it is consistent with my views, not the majority's.[5]

I recognize there is some danger of postmortem fraud by taxpayers. That is, a beneficiary who is due to receive an inheritance and is subject

---

[5]The special concurrence acknowledges this point.

to inheritance tax could cut a deal with a beneficiary who has exempt status.  Under such a corrupt deal, the exempt beneficiary would bring a bogus claim challenging the testamentary distribution, the parties would enter into a friendly settlement, the exempt beneficiary would receive the assets under the staged settlement, and the exempt beneficiary would then redirect most of them under the table to the nonexempt beneficiary.  By this chain of events, inheritance tax could be avoided.  Yet the danger of sham transactions exists anyway in many tax-related situations.  It can be minimized here by requiring the taxpayer to affirmatively prove the good-faith attributes of the settlement.

Here, the taxpayer established that a litigation settlement was made, and that it was made in good faith and not for purposes of tax avoidance.[6]  Accordingly, I would affirm the decision of the court of appeals.

---

[6]The taxpayer urged two positions in the alternative below.  First, it insisted the settlement should be accepted by the Department of Revenue.  Second, it maintained that the decedent Lester Gardiner Sr. lacked testamentary capacity, thus rendering the transfer on death invalid under the law.  The Department rejected both arguments after conducting an evidentiary hearing.  It found that the settlement had "no bearing on whether a taxable event occurred" and, further, the taxpayer did not "me[e]t her burden to prove by, clear, convincing, and satisfactory evidence that the Decedent was incompetent when he executed the [transfer on death]."  I would reverse on the first ground.  The unrebutted evidence demonstrates the good-faith character of the settlement, including the presence of an objective basis for believing that Lester Sr. was not competent when he executed the beneficiary designation form in 2003.

Ironically, the Department acknowledged at oral argument that allowing the taxpayer an opportunity to prove Lester Sr.'s lack of testamentary capacity in a Department hearing was inconsistent with the Department's own administrative position that only a prior judicial determination of lack of capacity would be accepted.