# IN THE COURT OF APPEALS OF IOWA

No. 19-0059
Filed August 21, 2019

**PENGZHEN YIN,**
        Plaintiff-Appellee,

**vs.**

**IOWA BOARD OF REGENTS,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

The Iowa Board of Regents appeals the district court order reversing its decision to expel a student. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, and George A. Carroll, Assistant Attorney General, for appellant.

Jonathan M. Causey of Causey & Ye Law, P.L.L.C., Des Moines, for appellee.

Considered by Potterfield, P.J., Greer, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**SCOTT, Senior Judge.**

The Iowa Board of Regents (Board) appeals the district court order reversing its decision to expel a student for academic misconduct. The Board's decision is supported by substantial evidence. We reverse the district court's decision and remand for an order affirming the Board's decision.

## I.     Background Facts & Proceedings

Pengzhen Yin is a student in the Tippee College of Business (TCB) at the University of Iowa (UI). Yin was involved in an incident of academic misconduct on December 11, 2015, while taking an English proficiency exam. Although the students taking the test were told to move to a new section and no longer work on previous sections, Yin was observed working on a previous section of the test. As a sanction for his conduct, Yin received no points for the section of the test that he improperly went back to work on, thereby reducing his overall grade. Yin did not appeal the finding he engaged in academic misconduct.

Yin was involved in a second incident of academic misconduct on March 30, 2016. In the class, "ESL Academic Reading Skills,"[1] the instructor noticed Yin's answers in a quiz were "eerily similar" to those of another student. When questioned, Yin stated "he had copied some answers." As a sanction for this incident, Yin's grade on the quiz was cut in half. Yin also did not appeal this finding he engaged in academic misconduct. Yin was informed by Kenneth Brown, the Associate Dean of TCB, a second violation was "a serious matter."

---

[1] ESL stands for English as a Second Language.

A third incident of academic misconduct occurred on December 15, 2017. Yin was assigned to write a four-page paper for "Asian Humanities: China." Yin submitted a paper titled, "Confucianism: Struggles in the Modern World." The instructor, Cuma Ozkan, stated Yin's paper was "so perfect that I could not compare this paper with the student's other writings. It is quite obvious that this paper is written from a very professional writer." Ozkan also noted the paper contained no references to personal experiences. Yin was given an "F" for the paper.

Brown informed Yin on January 8, 2018, TCB was recommending Yin be expelled from UI, "[b]ecause of the severity of this incident, and your prior offenses." Lon Moeller, Associate Provost, interviewed Yin and Ozkan. Moeller concluded Yin did not write the paper. He accepted TCB's recommendation Yin should be expelled from UI. Yin appealed to the Board. On June 11, 2018, the Board affirmed the final decision of UI.

Yin filed a petition for judicial review, challenging the decision of the Board. The court issued a decision on December 6, 2018, stating:

> The court finds the Board's decision was not supported by substantial evidence. Throughout its investigation the University was never able to provide any solid evidence the paper had been written by anyone other than Yin. Yin's expulsion was based merely on "a suspicion" the paper may have been written by someone other than Yin. The University could not identify who that person may be or produce any written source that contained the same information as Yin's paper. Yin explained his writing process and provided a written statement detailing his decisions for each section of the paper. The professor seemed primarily to base his suspicion on a comparison between Yin's former writing in the class and his writing style in the paper. As Yin noted, however, he had the opportunity to revise his paper multiple times over the course of the semester whereas the other writing was done during the time constraints of a class period.

The court concluded the Board's decision was not supported by substantial evidence and reversed its decision expelling Yin.

The Board filed a motion to reconsider, stating it was informed on December 7, 2018, the day after the district court's decision, of new evidence showing Yin admitted to the third incident of academic misconduct. The evidence showed on April 22, 2018, Yin emailed Moeller, stating, "In fact, I didn't write the paper." Also, on May 3, 2018, Yin emailed the Provost, Kevin Kregel, and stated, "At this point I will not, and am not challenging the incidents of academic misconduct." Counsel for the Board and Yin stated they were previously not aware of the statements. Yin was aware of the emails, as he sent them, and he stated UI should have been aware of the emails because they had been received by members of UI administration.

The district court denied the motion for reconsideration. The court found:

> Thus, the evidence attached to the Motion to Reconsider is newly discovered and is material. However, this evidence existed and was in the hands of the University's office of General Counsel and with reasonable diligence could have been discovered and produced to the Board of Regents and/or the court in the judicial review proceeding.

The court concluded there was no legal authority to reconsider or remand the case because the evidence was available and could have been provided to the Board. The Board appealed the decision of the district court.

## II.    Standard of Review

Our review in this administrative action is governed by Iowa Code chapter 17A (2018). We apply the standards of section 17A.19(10) to the agency's decision and decide whether the district court correctly applied the law in its judicial

review. *Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 842 (Iowa 2015). "If we reach the same conclusions as the district court, 'we affirm; otherwise, we reverse.'" *Id.* (citation omitted).

### III. Substantial Evidence

The Board claims its decision is supported by substantial evidence and the district court improperly reversed its decision. We will reverse the agency's factual findings only if they are not supported by substantial evidence when the record is viewed as a whole. *Coffey v. Mid Seven Transp. Co.*, 831 N.W.2d 81, 89 (Iowa 2013). "Evidence is substantial if a reasonable mind would find it adequate to reach the same conclusion." *2800 Corp. v. Fernandez*, 528 N.W.2d 124, 126 (Iowa 1995). "'Substantial evidence' need not be a preponderance, but a mere scintilla will not suffice." *Elliot v. Iowa Dep't of Transp.*, 377 N.W.2d 250, 256 (Iowa Ct. App. 1985).

"In assessing evidentiary support for the agency's factual determinations," we give "deference to credibility determinations" of the agency. *Nance v. Iowa Dep't of Revenue*, 908 N.W.2d 261, 267 (Iowa 2018). "It is the agency's duty as the trier of fact, not the reviewing court, to determine the credibility of witnesses, to weigh the evidence, and to decide the facts in issue." *Taylor v. Iowa Dep't of Human Servs.*, 870 N.W.2d 262, 266 (Iowa Ct. App. 2015).

"We do not consider the evidence insubstantial merely because we may draw different conclusions from the record." *Coffey*, 831 N.W.2d at 89. "Just because the interpretation of the evidence is open to a fair difference of opinion does not mean the [agency's] decision is not supported by substantial evidence." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007). "On appeal, our task

is not to determine whether the evidence supports a different finding; rather, our task 'is to determine whether substantial evidence . . . supports the findings actually made.'" *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 889 (Iowa 2014) (citation omitted).

Ozkan, Yin's instructor for the class, "Asian Humanities: China," believed Yin did not write the paper he submitted, "Confucianism: Struggles in the Modern World." Ozkan stated Yin's paper was "so perfect that I could not compare this paper with the student's other writings. It is quite obvious that this paper is written from a very professional writer." Ozkan also noted, unlike other students, the paper contained no references to Yin's personal experiences.

Brown recommended Yin be expelled and referred the matter to Moeller. Yin met with Moeller and explained his process in writing the paper. Yin stated he used research articles and rewrote the paper several times. He stated the research articles were "really hard" to understand. He explained how he picked the topic. Yin denied paying someone to write the paper for him.

Ozkan separately met with Moeller. Ozkan stated the paper appeared to be written by a "native speaker" of English. He stated he was familiar with Yin's writing style from other assignments. Ozkan also noted the paper used internet citations, which was not necessary, and used an additional citation beyond those provided to students by the instructor. At the meeting, Ozkan "affirmed his judgment, that the paper did not reflect [Yin's] writing style, and was not something [he] wrote by [himself]."

We find there is substantial evidence in the record to support the findings of the Board. Ozkan was familiar with Yin's writing style from other class assignments

and believed the paper was written in a more "perfect writing style" than Yin's other written submissions. Ozkan also noted the paper contained extra citations, which were not necessary. Additionally, the paper did not include any personal experiences. Ozkan concluded Yin did not write the paper himself. Ozkan's statements provide more than a scintilla of evidence to support a finding Yin engaged in academic misconduct by submitting a paper he did not write himself. The Board could find Ozkan's statements more credible than Yin's explanations about the paper, and we give deference to the Board's credibility determinations. *See Nance*, 908 N.W.2d at 267.

Contrary to the district court's findings, UI was not required to show who actually wrote the paper; the academic misconduct occurred because Yin did not write the paper he submitted for class. Also, the evidence of academic misconduct was not insubstantial merely because different conclusions could be drawn from the record. *See Arndt*, 728 N.W.2d at 393. We do not consider "whether the evidence supports a different finding; rather, our task is to determine whether substantial evidence, viewing the record as a whole, supports the findings actually made." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011).

## IV. Motion to Reconsider

The Board asserts the district court should have granted its motion to reconsider or remanded the matter for further agency action based on its claim of newly discovered evidence. We have already determined there is substantial evidence to support the Board's findings based on the evidence originally presented to the Board. For this reason, we conclude the additional evidence

sought to be presented by the Board would not further inform our decision and we do not consider the issue.[2]

We reverse the decision of the district court that reversed the order of the Board. We determine the Board's decision is supported by substantial evidence and should be affirmed. We remand to the district court for an order affirming the Board's decision.

**REVERSED AND REMANDED.**

---

[2] Yin should not be able to benefit from his pleadings where mistruths provide the foundation of his claim for relief. *See* Iowa R. Civ. P. 1004(2). We disapprove of Yin's dishonesty, and find this misconduct could have been the grounds for a new trial.